LEVI R. FULTON et al., Appellees, v. FLORA FULTON, Appellant.

**WILLS:** Construction—Remainders—Vested (?) or Contingent (?)
1 —Devise by Indirection. Where a devise is implied from a

simple *direction to divide*, the devisee takes no *vested* interest until the time specified for a division arrives.

PRINCIPLE APPLIED: The material parts of a will were:

1. That testator's wife should have a life estate in certain real estate.

2. That "*upon the death of my wife*, I direct that all my property * * * be divided between my eight children."

3. That "in case of the death of any of said children *without living issue*, then the share of said child shall be divided equally among the surviving children or their legal heirs."

Testator was survived by the said wife and said eight children. Subsequently, *but prior to the death of testator's wife*, one of the children died, and left a widow surviving, *but no issue*. Later, the mother (testator's wife) died. The constructions of the will contended for were:

1. By the seven remaining children: That they took the entire property, because the will gave no vested interest *until the death of the mother*.

2. By the son's widow: That she took a one-eighth interest, because such interest became *vested* in her husband (testator's son) *when the father died*.

*Held*, the first contention was correct.

**WILLS:** Construction—Remainders—Vested (?) or Contingent (?)—
2  Partiality of Law. The partiality of the law for *vested* remainders must, manifestly, yield to the clearly expressed testamentary intent of testator.

PRINCIPLE APPLIED:   See No. 1.

**WILLS:** Construction — Remainders —''Words of Substitution.''
3  "Words of substitution,"—that is, words substituting another as devisee in case the first devisee cannot take under the will by reason of the happening or non-happening of a specified condition,—when clearly expressed, must be given full effect, even though such construction results in a non-vested remainder, contrary to the general preference of the law.

**WILLS:** Construction—Remainders—Vested (?) or Contingent (?)
4  —New York and Common-law Rule Distinguished. The rule that an estate in remainder is *vested* whenever there is a person in being who would have the immediate right to the possession of the land if the precedent estate were then terminated, with the qualification that such vested remainder may be rendered defeasible *by a condition subsequent*, is a New York statute rule, and not the common-law rule, which is in force in Iowa.

Deemer and Weaver, JJ., dissent as to the construction placed on the will in question.

*Appeal from Butler District Court.—M. F. EDWARDS, Judge.*

FRIDAY, APRIL 6, 1917.

ACTION to construe a will. The question presented is whether the children of the testator took a vested or a contingent remainder at the time of his death. The remainder was subject to the life estate of the widow. One son died without issue, after the death of the testator, but before the death of the widow. The deceased son left a widow surviving him. This widow claims, as sole devisee of her husband, the remainder alleged to have vested in her husband upon the death of the testator. The trial court held that the remainder was contingent and not vested. The widow of the deceased son has appealed.—*Affirmed.*

*W. C. Shepard,* for appellant.

*C. G. Burling,* for appellees.

EVANS, J.—The testator was Levi Fulton. He left surviving him a widow and eight children. He devised certain real estate in Butler County, the material part of his will being as follows:

1. WILLS: construction: remainders: vested (?) or contingent (?): devise by indirection.

"First: After the payment of my just debts, including funeral expenses and expenses of administration, I give, devise and bequeath unto my wife, Elizabeth Fulton, to hold during the balance of her natural life, and enjoy the rents and profits therefrom, the following described property, to wit: [Describing it.]

"Second: Upon the death of my wife, I direct that all my property, real and personal, shall be divided between my eight children, viz.: [Naming them.] In case of the death of any of said children without issue living, then the share of such child shall be divided equally among the surviving children, or their legal heirs."

One of the surviving children of the testator was John

Fulton, who died without issue before the death of the surviving widow of the testator. If John Fulton had survived the widow of the testator, he would have taken under the will as one of the remaindermen.

It is contended for the appellant that 2. WILLS: construction: remainders: vested (?) or contingent (?): partiality of law. John Fulton took, at the death of the testator, a vested remainder, the enjoyment of which was only postponed during the life of the surviving widow. On the other hand, it is contended for appellees that the children of the testator took a contingent remainder only, and that, by the terms of the will, the remainder could vest only upon the death of the surviving widow, and vest then only in such of the children as should survive the widow, and in the issue of those deceased. The rules of construction herein involved are well settled, but the application of them to the particular case is often very difficult. Many of the cases which have been considered are near the border line, and the distinctions drawn are sometimes very close. It is well settled that, unless the intent of the testator is made to appear to the contrary, a devise will be construed in favor of a vested remainder instead of a contingent. The cardinal rule of construction, however, is that the intent of the testator, as manifested by the terms of the 3. WILLS: construction: remainders: "words of substitution." will, must be given effect. Does the will before us fairly indicate by its terms that the testator intended to make substitution for such of his children as should die without issue before the time of the distribution provided "upon the death of my wife?"

The appellant contends that the case is similar in its facts to *Blain v. Dean*, 160 Iowa 708; whereas the appellees contend that the case is ruled by *Birdsall v. Birdsall*, 157 Iowa 363, and *Baker v. Hibbs*, 167 Iowa 174, and similar previous cases. It is quite clear that the case is not ruled

by *Blain v. Dean,* supra. In that case, certain specified property was set aside to the widow for life, and *other* property was devised to the children. This latter provision of the will necessarily took effect upon the death of the testator, there being no condition or contingency in reference thereto. The *remainder,* subject to the life estate of the widow (and of another), was also devised to the children, after the death of the life tenant *in the same shares as in the first provision.* It was therefore held in that case that all the interest of the children necessarily vested at the death of the testator. We are clear, therefore, that this case is not ruled by the *Blain* case. More nearly in point are the following cases: *Birdsall v. Birdsall,* 157 Iowa 363; *Baker v. Hibbs,* 167 Iowa 174; *Olsen v. Youngerman,* 136 Iowa 404; *Taylor v. Taylor,* 118 Iowa 407; *Wilhelm v. Calder,* 102 Iowa 342; *McClain v. Capper,* 98 Iowa 145.

1. There is one feature of this case that is quite decisive, and we give it our first attention. It will be noted that, by the terms of the will, the testator directed that, upon the death of his wife, all his property should be *divided* among his children, etc. There is no other provision of the will whereby it purports to devise any property to any children. The *devise* to them is implied by the direction to *divide,* above quoted. In such a case, we have held repeatedly that the devise or gift is inseparable from the direction to divide; and where the directed division is, by the terms of the will, postponed to a future date, the gift is likewise postponed. In such a case the remaindermen take a contingent, and not a vested, remainder, where the will imposes the condition that the remaindermen survive the future event or have issue. This was the holding in *McClain v. Capper,* 98 Iowa 145; *Olsen v. Youngerman,* 136 Iowa 404; *Lingo v. Smith,* 174 Iowa 461, 467. In the *Lingo* case we said:

"In *Olsen v. Youngerman,* 136 Iowa 404, the gift was

construed to be within the well established rule that, where the gift is implied from the direction to divide or pay at a future time, the gift is future, not immediate; contingent, not vested. In other words, where the gift is to be implied from the direction to divide or distribute, it necessarily is inseparable from that direction and must partake of its quality; so that if one is contingent, the other must be. See *McClain v. Capper*, 98 Iowa 145; *In re Kountz's Estate*, 213 Pa. 390 (62 Atl. 1103, 3 L. R. A. [N. S.] 639, 5 Ann. Cas. 427); *In re Crane*, 164 N. Y. 71 (58 N. E. 47); *McCartney v. Osburn*, 118 Ill. 403 (9 N. E. 211)."

In the *McClain* case, the will contained the following provision:

"When my youngest child arrives at full age, I desire that the real estate * * ·* be equally divided between my children [naming them], their heirs or survivors of them."

We held that no estate vested until the youngest child had arrived at majority, and that another child that died testate before such event passed no interest in such estate to his devisee. In *Taylor v. Taylor*, 118 Iowa 407, the will contained the following:

"I give, devise, and bequeath all my property, real estate described as follows [describing real estate in question], and personal property, to my wife, Elizabeth Taylor, for her use and control during her widowhood, and at her decease or marriage to be equally divided between my children or their heirs as the law directs," etc.

We held that the time of the vesting of the interest of the children was postponed to the time of the decease or marriage of the widow, and that substitution was intended for any of the children who should die before such event. In *Olsen v. Youngerman*, 136 Iowa 404, we construed similar provisions in a will to the same result.

2. If the will under consideration fairly discloses the

intention of the testator that only such of his children as
should survive his widow should take under its provisions,
then the holding of the trial court is well sustained by our
previous cases. In *Wilhelm v. Calder*, 102 Iowa 342, the
will contained the following provision:

"The residue of my estate, both real and personal, I
give and bequeath to my children, viz., Mary E. Calder,
Edith M. Calder, Chas. A. Calder, Adeline E. Calder, Lewis
B. Calder, Cornelia C. Calder, and George A. Calder, equal-
ly; but the said property is to be held by my said executor
hereinafter named until after the death .of my said wife,
Alcinda A. Calder. And, in the event that my said wife
shall die before the youngest of my surviving children be-
come of age, then said property shall be held by my said
executor until my said youngest surviving child shall be-
come of age, at which time the whole of the remaining part
of my said estate shall be divided equally between my said
children then living, share and share alike, and descend to
them in fee simple."

We held that the remainder did not vest before the
death of the surviving wife, nor before the.majority of the
youngest child, and that a child of the testator who died
before such event took nothing under the will in his life-
time.

The *Birdsall* case, 157 Iowa 363, involved a provision
of a will devising a life estate to Birdsall and his wife,
and "at their death" to such of their children as should be
living at that time.

We held the remainder thus devised to be contingent,
and not vested. To the same effect is *Baker v. Hibbs*, 167
Iowa 174, 179; also *Horner v. Haase*, 177 Iowa 115.

It is assumed in the dissent that our holding herein
runs counter to *Lingo v. Smith*, already cited. If this be
a correct assumption, then we have overruled our previous
cases herein cited without purporting to do so and without

the consciousness of having done so. An examination of that case will show that the assumption of the dissent in this regard is not correct. The result in that case did not turn upon the question which is decisive herein. In that case, the testator, by Paragraph 4 of his will, devised to his wife a life estate in his farm, with the remainder over to his two youngest children, William A. and Marcus. By Paragraph 6 of the will, the testator purported to attach a condition to the remainder, failing which, such remainder should pass to all the living children of the testator and to the issue of those deceased. The condition was that William A. and Marcus should "outlive her [the wife] or have issue." Marcus died before the wife, and had no issue. The right of the remaining children and the issue of those deceased to take the share devised to Marcus was recognized by all the litigants, and no question was made before us as to such share of Marcus. William also died before the widow, but left issue surviving. Because William *had issue,* the condition laid in Paragraph 6 of the will was met as to him.

It was argued for the appellants therein that William took under the will either a contingent remainder or else a vested remainder which was subject to defeasance by the condition specified in the sixth paragraph of the will. To this contention, the opinion in effect makes the threefold answer: (1) That the language of Paragraph 4 indicated the intention of the testator to vest immediate fee to the remainder, and whether the condition attached in Paragraph 6 was void as repugnant, *quaere;* (2) that, if the remainder devised to William was at first contingent, it became vested in his lifetime by the existence of issue; (3) that, if the estate in remainder vested subject to defeasance by failure of the condition subsequent, specified in Paragraph 6, yet there was no failure of such condition, and therefore no defeasance. It will be readily seen, therefore,

that the question under consideration in the case at bar
was not at all controlling in the *Lingo* case. It may be
said that the arguments in that case on that question were
cast largely under the theory of the New York rule of con-
tingent and vested remainders, and not under the common-
law rule. The distinction between the two rules or theories
will be indicated in the next paragraph hereof. The opin-
ion in the *Lingo* case dealt with the arguments as made.
It did not purport to adopt any other rule than we have
hitherto followed on the subject of vested and contingent
remainders. As will be observed later, the theory of a
"vested remainder subject to defeasance by a condition sub-
sequent," is an incident of the New York statutory rule, and
not of the common-law rule. The question of conflicting
rules was not dealt with at all in the *Lingo* case; nor was
there any occasion for dealing with it, the controlling prop-
osition therein being that the condition imposed by the
will was fully met. Nor would there be any occasion for
dealing with it in this case, except for the question raised
by the dissent.

If we were to hold in the case at bar that John Fulton
took a vested remainder subject to defeasance by a condi-
tion subsequent, we would still have to hold that such vested
remainder was divested by a failure of the condition subse-
quent, in that he did not survive the widow. So that, for
the purposes of this particular case, the result would be the
same, whether the remainder involved be deemed as strict-
ly contingent or as a vested remainder, subject to defeasance
as above stated. On either theory, John Fulton having
died without issue before the widow, the share which would
otherwise have gone to him under the will must follow the
direction of the will.

Keeping before us the cardinal rule of construction
that the intent of the testator, as manifested by the terms
of the will, must govern our construction thereof, it is

enough that the case at bar is quite governed in its result by our previous cases, regardless of the distinction between contingent and vested remainders where the vested estate is subject to defeasance by a condition subsequent, such as involved herein.

3.   In view of the difference of opinion disclosed by the dissent filed herewith, some attention will be given herein to the essential distinction between vested and contingent remainders.   There is confusion in the cases on the subject.   The confusion is one largely of inadvertence, and it must be confessed that few of the appellate courts have wholly escaped it.   Generally speaking, there are two differing rules extant in the books for determining whether a remainder in a given case be *vested* or *contingent*.   This difference of rule arose by reason of legislation, first adopted by the state of New York in 1830.   The common-law definition of remainders may be stated briefly as follows:

4. WILLS: con-
struction: re-
mainders:
vested (?) or
contingent (?):
New York
and common-
law rule dis-
tinguished.

"Remainders are either vested or contingent.   A vested remainder, whereby the estate passes by the conveyance, but the possession and enjoyment are postponed until the particular estate is determined, is where the estate is invariably fixed to remain to certain determinate persons.   Contingent remainders are where the estate in remainder is limited to take effect either to a dubious or uncertain person or upon a dubious or uncertain event, so that the particular estate may be determined and the remainder never take effect."

In 1830, the legislature of New York adopted a statutory rule as follows:

"Future estates are either vested or contingent.   They are vested when there is a person in being who would have an immediate right to the possession of the land upon the ceasing of the intermediate or precedent estate.   They are

contingent whilst the person to whom or the event upon which they are limited to take effect remains uncertain."

At the time of the adoption of this statutory rule, it was supposed by the text-writers that it was a mere simplification and codification of the common law on the subject. It was later held, however, by the Court of Appeals of that state, that this legislation had the effect of changing the common-law rule, and that certain remainders which were contingent under the common law were vested under the New York statute. *Coster v. Lorillard,* 14 Wend. (N. Y.) 265; *Hawley v. James,* 16 Wend. (N. Y.) 61; *Moore v. Littel,* 41 N. Y. 66.

By judicial construction of the New York statute, the rule was declared that, when there is a person in being who would have immediate right to the possession of the land if the intermediate or precedent estate were now terminated, the remainder is vested, and not contingent. To this rule was the qualification that a vested remainder could be rendered defeasible by a condition subsequent.

The New York statute has been adopted by legislation in a few other states. In other states, the New York decisions have been followed inadvertently, in oversight of the fact that they did not purport to follow the common-law rule. Such was the inadvertence of the Supreme Court of Alabama, in *Gindrat v. Western Railway of Alabama,* 96 Ala. 162. This inadvertence was confessed by the same court in a later case (*Smaw v. Young,* 109 Ala. 528), wherein the New York rule was condemned as unsound in principle, although at the same time it was adhered to on the sole ground that the former declaration of the court had become a rule of property. The following excerpts will sufficiently indicate the difference between the common-law rule and the so-called New York rule. Quoting from 20 Am. & Eng. Encyc. (1st Ed.) 844:

"The American cases upon the subject may be divided

into two classes: (1) Those based upon the common law, * * * and (2) those based upon the definition of a vested estate contained in the New York Revised Statutes, in which a future estate is declared to be vested 'when there is a person in being who would have an immediate right to the possession of the lands upon the ceasing of the intermediate or precedent estate,' thus making the test depend solely upon the present capacity to take effect in possession if the possession were to become vacant, without regard to whether or not there is a person *in esse* capable of answering the description of the remaindermen before the determination of the particular estate. It may well be doubted whether this piece of legislative definition was intended to change the common law; the probability is that its framers considered it a peculiarly happy instance of the codification of the existing law on the subject; even Chancellor Kent says that it 'appears to be accurately and fully expressed.' [4 Kent Com. 202.] The New York Court of Appeals has, however, decided that, by eliminating the personal element from the notion of a vested remainder, it has made a vested estate under the statute something other and different from anything known to the common law. As might have been expected, upon the authority of Kent's statement, the decisions of the New York courts, under the statute, have been accepted and followed in other states as authoritative expositions of the nature of a vested remainder at common law, and great confusion has naturally arisen."

Quoting from a note to *Robertson v. Guenther*, (Ill.) 25 L. R. A. (N. S.) 887, 889:

"An element of confusion has been introduced by the statutory definition of a vested remainder, found first in the statutes of New York, and by the effect given thereto by the courts of that state. * * * To obtain a full understanding of the situation, it is necessary to go back to a statement made by Fearne (*216) in discussing the

principle that the uncertainty of a remainder's ever taking
effect in possession does not make a remainder contingent,
if, in other respects, it have the essential requisites of a
vested remainder.  The present capacity of taking effect
in possession, if the possession were to become vacant, and
not the certainty that the possession will become vacant
before the estate limited in remainder determines, univer-
sally distinguishes a vested remainder from one that is
contingent.'  *  *  *  Fearne's statement would seem to
have been in the mind of Chancellor Kent when he said
(Com. *202) : 'The definition of a vested remainder in
the New York Revised Statutes appears to be accurately
and fully expressed. It is "when there is a person in be-
ing who would have an immediate right to the possession
of the lands upon the ceasing of the intermediate or pre-
cedent estate." ' This remark seems to have misled the
court of other jurisdictions—notably the United States Su-
preme Court  *  *  *  into accepting the decisions of the
New York courts under the statute in question as exposi-
tory of the common law, although the New York courts
themselves regarded the Revised Statutes as a simplifica-
tion, rather than as a codification, of common-law doctrines.
*  *  *  But the view that the statutory definition of a
vested remainder makes the ascertainment of the person
who is to take unnecessary to render the remainder vested,
for all purposes, provided there is a person in existence
who would be entitled to take if the precedent estate were
at any time to cease, seems to be no longer recognized in
that state—except, perhaps, so far as the question of the
unlawful suspension of the power of alienation may be in-
volved. See *Purdy v. Hayt,* 92 N. Y. 447; *Hall v. La France
Fire Engine Co.,* 158 N. Y. 570, (53 N. E. 513) ; *Sanson v.
Bushnell,* 25 Misc. 268, 55 N. Y. Supp. 272. The case of
*Moore v. Littel,* supra, upon which such view rested, while

not expressly overruled, seems to have been in this connection pretty well discredited."

The note above quoted from presents a very full collation of cases on the subject here under consideration, to which reference may profitably be had for a more detailed setting forth of the decisions of the several states. The foregoing is a sufficient indication of the presence in the body of the law of two differing rules or definitions of vested and contingent remainders. These conflicting rules, through oversight of their divergence, have become the occasion of confusion. In order to avoid further confusion, the fact that two rules are running at large among the decisions should be borne in mind; the distinction between them should be observed; and one of them alone should be adopted and consistently followed.

In this state, the common-law rule presumptively prevails. We have no statute similar to that of New York. The New York decisions indicate the great difficulty that has been encountered there to maintain the consistency of the New York rule. The later New York cases indicate a manifest retreat from some of the ground occupied in the earlier case of *Moore v. Littel,* 41 N. Y. 66. See *Purdy v. Hayt,* 92 N. Y. 446; *Hall v. La France,* 158 N. Y. 570 (53 N. E. 513). In the later case, it was held that a grant to one for life, "and at her death to the heir or heirs of her body, her surviving," created a *contingent* remainder, and not a vested one. In that case, the life tenant was the mother of a child who was living at the time of the grant and the creation of the remainder, but who died before the life tenant. It was held that the child took no vested interest in the estate, and that the father, who survived both child and mother, the life tenant, took nothing by descent from his child.

*In re Moran's Will,* 118 Wis. 177 (96 N. W. 367), is an instructive case at this point. The New York statute was

adopted by legislation in Wisconsin. The holding in that case is that the statute was intended only to deal with the rule of perpetuities, and that, where the will under consideration does not offend against the statute forbidding perpetuities, the construction of such will will not be affected by the statute. The will in that case gave a life estate to the widow, "and after her death to be divided equally among my children who may survive. I also wish my sister Julia Dolan to have an equal share of the above property with my children, if she survives the death of my wife." It was held that, notwithstanding the statute, the intent of the testator, as manifested by the foregoing language, was to create a *contingent* remainder in the common-law sense, and effect was given to the will accordingly. The following syllabus prepared by the court will indicate briefly the holding in that respect:

"1. The terms 'vested estates' and 'contingent estates' used in Section 2037, Rev. St. 1898, have far different significations than the common-law terms 'vested remainders' and 'contingent remainders.'

"2. A vested remainder at the common law is one where there is 'some person *in esse*, known and ascertained, who by the will or deed creating the estate is to take and enjoy the same upon the expiration of the existing particular estate, and whose right to such remainder *no contingency can defeat*.'

"3. A vested estate or remainder in the statutory sense is one where there is a person *in esse*, 'who, should the particular estate now cease, would, *eo instanti et ipso facto*, have an immediate right to the possession,' though whether he would ever take in fact might depend upon an uncertain event rendering the interest a contingent remainder, strictly so called, by the common-law rule.

"4. While a vested remainder by the rules of the common law is not subject to be divested at all, not so a vested·

estate in the statutory sense. That may be divested upon
condition subsequent in whatever way or manner the cre-
ator thereof in creating the same may provide or authorize.
Section 2057, Rev. St. 1898.

"5. While at common law an estate in remainder can-
not be at the same time both vested and contingent, there
is that seeming contradiction as to remainders under Sec-
tion 2037, Rev. St. 1898.

"6. A person may be so conditioned that he would
immediately take in remainder should the precedent estate
presently cease, yet may not be so entitled at any future
time. The element of certainty, by force of the statute,
gives to the remainder the character of a vested estate for
the purpose of the subject covered by the statutes. The
element of uncertainty gives to the remainder, by same
means, the character of a contingent estate for the same
purpose. Neither situation, however, has anything what-
ever to do with the testamentary right except as herein-
after stated.

"7. Whether an estate in remainder created by will is
or is not vested in the common-law sense is controlled by
the character of the estate actually created, as evidenced by
the testamentary intention, not by any law, common or
statute.

"8. The testamentary intention in any case is to be
determined from the will. Rules of construction aid in
discovering that in proper cases, but do not control it or
prevent its execution except in the one case of a violation
of the prohibition against unduly limiting the absolute
power of alienation.

"9. There is a rule for the construction of wills that
the law favors the vesting of estates in a common-law sense
and in a statutory sense as well, as regards the subject of
perpetuities, but it is not for use except in solving uncer-
tainties, and the same is true of all other rules for judi-

cial construction as regards wills, the same as regards all other writings.

"10. When there is a devise to one, remainder over direct to others, nothing appearing in the will to the contrary, the legal presumption is that the testator intended to create vested estates in remainder in a common-law sense; that is, estates indefeasible, descendible and alienable.

"11. When an estate is by will carved out of a fee and the remainder is directed to be divided between the members of a class of persons after the expiration of such par-ticular estate, the presumption of a testamentary inten-tion that the estates in remainder shall vest upon the death of the testator is displaced by a presumption, nothing ap-pearing in the will to the contrary, that the testator pur-posed to create contingent remainders in a common-law sense.

"12. The rule last above stated applies regardless of the doctrine of equitable conversion, that not being important except as regards the statute on the subject of perpetuities.

"13. Words of survivorship in a will, in respect to a devise of property in remainder to be divided between mem-bers of a class, are presumed, nothing appearing to the contrary, to refer to the time set for such division.

"14. A bequest or devise in remainder for division and distribution at some point of time distant from the death of the testator, in the absence of an indicated pur-pose otherwise, is to be read as a direction to divide be-tween those persons answering the calls of the class in being at the time set for division, and that is so regardless of the doctrine of equitable conversion.

"15. The devise and bequest of property in the case in hand to the testator's wife, to be divided after her death equally among the testator's children who may survive, 'also my sister Julia to have an equal share * * * with my children if she survives the death of my wife,' by the

intermediate period of enjoyment and indefinite point of time set for division and distribution of the property subsequent to the death of the testator, evinces an intention to postpone the vesting in a common-law sense till the arrival of such time, and to limit the participants to those then in being, of the class designated. The words of survivorship, under the circumstances, evince the same purpose. Such is also the literal sense of the words, and, there being nothing in the law to the contrary, such sense must control.

"16. The purpose of the testator being determined as indicated, and not offending against the statute on the subject of perpetuities, whatever the estate in remainder be called, it does not militate against such intention being executed."

It is to be noted that, under the so-called New York rule, as applied in some cases, such a provision of the will as set forth in the *Moran* case would have created a *vested* remainder, subject to defeasance as to such beneficiaries as should not survive the life tenant. So far as our own cases are concerned, an examination of them will disclose that we have been in the main consistent in our application of the common-law rule to this class of cases. In the *Birdsall* case, 157 Iowa 363, the opinion of Justice McClain called attention particularly to the New York rule and to the confusion resulting therefrom in some of the cases, which was, in effect, a warning against the inadvertent mixing of argument under both rules. It is doubtless true that the New York rule has inadvertently colored the discussion in some of our cases, but in no case has such rule been decisive of the result, unless it be that of *Archer v. Jacobs,* 125 Iowa 467, as indicated in the *Birdsall* case. The rule was not decisive in *Shafer v. Tereso,* 133 Iowa 342. It is true that the substance of the New York rule was set forth therein as a correct rule. This was done, however, upon the assumption that it was the common-law rule, and upon the

authority of the *Archer* case. That this was done inadvertently is manifest from the fact that the common-law rule was set forth correctly in the earlier part of the opinion, and the result of the case was made to rest thereon. In other words, in the *Shafer* case, we assumed to apply the common-law rule.

The dominant rule of construction with us is that the intent of the testator, as it is fairly gathered from the will, must prevail. Even the presumption in favor of a vested remainder is one which obtains only in support of the statute against perpetuities. The right to suspend the power of alienation for a limited time is a right permitted to the testator under our statute. Many testators desire to avail themselves of this right. To the mind of the testator, it is often a method of conserving the devise to the real benefit of the devisee. A vested remainder is alienable; a contingent remainder is inalienable. The effect of the New York rule, as applied in some cases, is to reduce the right of the testator to suspend to some extent the power of alienation. The remainder contingent at common law is held to be vested under the New York rule, in order to subject it to alienation by the devisee, and to seizure upon execution against him; and this even though such vested remainder be subject to defeasance by a condition subsequent. When it is considered that the sale or purchase of such an estate subject to defeasance amounts ordinarily to a mere wager, and is in the nature of an act of waste and dissipation of the estate before its enjoyment has begun under the terms of the will, and when it is considered further that the suspension of the power of alienation is a matter wholly of legislative cognizance, and that legislative permission is had for such suspension for a limited time, there is no very persuasive reason apparent why a mere judicial presumption should be created to run counter to such legislation. And this is only another way of repeating that the intent of the

testator must govern, subject only to the statute against perpetuities. Nor should it be deemed a quasi offense against such statute that the testator has availed himself of its permission.

Turning again to the case at bar: if it can fairly be said from the language employed in the will that the testator intended to devise a remainder only to those of his children as should survive his wife, then it was clearly a case of *contingent* remainder in the common-law sense. Under the New York rule, as interpreted at least in some of the cases, it was likewise a case of *vested* remainder, subject, however, to defeasance by a condition subsequent in the event of the death of any child before the life tenant. For the purpose of this case, therefore, it matters not which rule be followed. Because of his death before the life tenant, John Fulton took nothing ultimately under either rule. The judgment below must be—*Affirmed.*

GAYNOR, C. J., LADD, PRESTON and SALINGER, JJ., concur.

DEEMER, J. (dissenting.)—I am of opinion that the will in question gave a vested remainder to the named children of the testator, and that nothing but the time of enjoyment was postponed. Under well settled rules, the remainder vested in these children upon the death of the testator, and not at the time of the death of the life tenant. See *Lingo v. Smith,* 174 Iowa 461, and cases cited. I shall not take the time or space necessary to review these cases, and content myself with saying that, in my opinion, the holding of the majority in this case merely adds to the existing confusion in our previous cases. I am not inclined to disagree with the conclusion reached in this case, but I am impressed with the thought that, under the rule announced by the majority, the estate here created was a vested one in the remaindermen, subject, perhaps, to be divested by their death

before the life tenant. I am led to inquire what the uncertainty in the devise is in this case. The devise is not to an unascertained class, but to named individuals. There was, perhaps, uncertainty as to the time of enjoyment, but not as to the fact of enjoyment. There is no other contingency annexed to the gift itself than the termination of the particular estate, and that was liable to happen by the death of the life tenant at any time; when that estate determined, the remaindermen were to take in enjoyment. Confirmation of this is shown in other parts of the will, which say that, in event of the death of any of the children named, without issue, their share shall go to the survivors. Suppose one of these children had a child born alive before the death of the life tenant, but who died before the death of the owner of the particular estate. What would be the rule? It will be observed that the persons named as remaindermen were all *in esse* at the time testator died. They were expressly made the object of testator's bounty, but right to the enjoyment of the property was postponed until the death of the life tenant. What is the contingency which makes the remainder a contingent one? I especially dissent from the holding of the majority that the rule in this state does not favor a construction that an estate is a vested rather than a contingent one. Public policy favors the ruling vesting estates at the earliest possible moment, and, in event of doubt, all courts should construe a remainder as vested and not contingent. I am sorry to see this rule thrown into the discard.

WEAVER, J., concurs in this dissent.