In re Estate of Charles M. Trimble.

No. 46457.

June 6, 1944.

J. O. Watson, Jr., of Indianola, for appellant.

Henderson, Wilson & Wilson and F. P. Henderson, all of Indianola, for appellees.

Miller, J.— Charles M. Trimble died testate October 12, 1941. He left no surviving widow. His only surviving child, a son, C. Virgil Trimble, forty-two years old, was his sole heir at law. Other relatives are mentioned in the will. They all survived testator and were his son's second wife, Laura Trimble, forty-three; his only grandchild, the daughter of his son by the first marriage, Betty Jean Trimble, seventeen; his

sister, Carrie R. Badley, sixty-seven; his two brothers, W. D. Trimble, seventy-five, and H. A. Trimble, fifty-nine; his only niece, Helen Adams, thirty-four, and her three children, James Adams, nine, Jerry Adams, five, and Frank Adams, one.

Testator's will contained ten numbered paragraphs followed by several unnumbered paragraphs. Paragraph 1 named his son executor without bond. Paragraph 2 provided that, "All my property both personal and real remain in the estate * * * during the life of my son * * *." Paragraph 3 provided, "The net income from my property both personal and real is to go to my son, Charles V. Trimble, with exceptions of and under conditions further set forth in the various paragraphs of this will." Paragraph 4 made any devise to the granddaughter, Betty Jean Trimble, contingent upon her mother, Mrs. Charles Freeman, and her stepfather, Charles Freeman, foregoing any claim for alimony or support money from testator's son.

Paragraph 5 provided that, at the son's death, the net income of certain property on the north side of the public square in Indianola be divided between testator's sister and his grandchildren; after the death of the sister and son, the grandchildren to receive the net income, if living; should the last grandchild die after the son but before the sister, the net income to be divided among his brother or brothers and sister, share and share alike; at the death of the "last relative mentioned in this paragraph," the property to go to Simpson College.

Paragraph 6 provided that any reference to grandchildren is limited to children begot by the son and does not include any children adopted by the son.

Paragraph 7 provided that the net income from certain property on the south side of the public square in Indianola should go, at the death of the son, to the grandchildren, share and share alike; at the death of the last grandchild after the son's death, the net income to go to testator's brothers and sister, share and share alike; at the death of the "last mentioned heir in this paragraph," the net income to go to his niece, Helen Adams, if living; at the death of the "last one mentioned in this paragraph," the property to go to Simpson college.

Paragraph 8 provided that, at the death of the son, the net income from the property on the northwest corner of the public

square in Indianola was to go to the son's wife, Laura Trimble, if living; if Laura had secured a divorce from the son, the net income to go to the grandchildren; if the son had secured a divorce from Laura, the net income to go to Laura for life; at the death of the son and Laura, the net income to go to the grandchildren; at the death of the last grandchild after the death of the son and Laura, the net income to go to the great grandchildren; if no great grandchildren exist after the death of the "last above mentioned heir," the net income to go to testator's brothers and sister, if living; at the death of the last one of the "above mentioned beneficiaries in this paragraph, this property is to go to Simpson College."

Paragraph 9 provided that the net income from certain property in Aders addition to Indianola should go to the grandchildren, if living at the son's death; at the death of the son and the last grandchild, the net income to go to testator's brothers and sister, if then living; if living "after the death of the last above mentioned heir in this paragraph," the net income to go to the niece, Helen Adams, for life; at the death of Helen Adams, "after death of above mentioned heirs," her children to inherit the property.

Paragraph 10 provided that at the death of the son the net income from the ten and one-half acres where testator made his home was to go to his granddaughter, Betty Jean Trimble, for life; if she has any children living at the time of her death, "they are to inherit" the property; should the granddaughter die without surviving issue and before testator's "last brother or sister," the net income to go to such brothers or sister; after the death of "the last one of the above mentioned heirs in this paragraph," the place "to be inherited by the children" of Helen Adams, the niece; "If however all of the above mentioned beneficiaries in this paragraph have passed away before that of my granddaughter, this place is to go to Simpson College, at her death."

The unnumbered paragraphs provided for certain specific outright bequests and devises and contained a residuary clause which provided as follows:

"At the death of my son, the property not above referred in any paragraph of this will both personal and real, I bequeath

to any child or children of his if living share and share alike. If at the death of my son he has no living children, the remainder of my property referred to in this paragraph shall be divided between my legal heirs share and share alike.''

The trial court determined that testator's son takes only a life estate under the will; also that ''said will is valid in all particulars and does not violate the 'rule of perpetuities' save and except as to the property designated in said will as the property 'located on the northwest corner of public square, Indianola, Iowa' as to which property the rule against perpetuities does apply, and as to said property it goes to the various named life tenants, and then becomes a part of the residuary estate and passes to the heirs of the testator, share and share alike.'' The son alone appeals to this court.

I. Appellant contends that all of the devises or bequests under the will, except those in his favor, violate the rule against perpetuities and are void so that all of the property in the estate passed to him in fee. We find no merit in the contention.

In some states the rule against perpetuities exists as a development of the common law. However, in Iowa it has been codified as section 10127, Code, 1939, which provides as follows:

''Every disposition of property is void which suspends the absolute power of controlling the same, for a longer period than during the lives of persons then in being, and twenty-one years thereafter.''

One of the early decisions of this court, interpreting the foregoing statute, is that of Phillips v. Harrow, 93 Iowa 92, 106, 61 N. W. 434, 438. The statute was the same then as it is now. After quoting the statute, we stated:

''It was said in Todhunter v. Railroad Co., 58 Iowa, 206, 12 N. W. Rep. 267, that this is the provision made in this state against perpetuities, and that it is not essentially different from that which has long been the law of England. The rule relates to the vesting of an estate, and does not affect its continuance after it has become vested. 18 Am. & Eng. Enc. Law, 362.''

To the same effect, see Sisters of Mercy v. Lightner, 223

Iowa 1049, 1059, 274 N. W. 86; Lunt v. Van Gorden, 229 Iowa 263, 269, 294 N. W. 351.

The rules of law applicable to the question whether a remainder is vested or contingent are concisely stated by Judge Evans in the case of Fulton v. Fulton, 179 Iowa 948, 957, 162 N. W. 253, 256, L. R. A. 1918E, 1080, as follows:

"Remainders are either vested or contingent. A vested remainder, whereby the estate passes by the conveyance, but the possession and enjoyment are postponed until the particular estate is determined, is where the estate is invariably fixed to remain to certain determinate persons. Contingent remainders are where the estate in remainder is limited to take effect either to a dubious or uncertain person or upon a dubious or uncertain event, so that the particular estate may be determined and the remainder never take effect."

The foregoing principles of law are not questioned by appellant. After quoting section 10127, Code, 1939, counsel states:

"Under the rulings of our Court if a remainder or an estate is vested within the above period the rule against perpetuities does not apply. Consequently, the first test to be applied is whether the remainder is vested or contingent. Obviously, also, under the Iowa law mere delay in the enjoyment of property (in spite of the wording of the statute) does not make the estate or remainder contingent if the person eventually entitled to it can be ascertained. Obviously, also, under the Iowa law, or at least under the weight of authority in this country, the mere opening up of a class of beneficiaries or the increase in the number of beneficiaries in a class does not make the bequest contingent."

Applying the law as announced by this court and as conceded by counsel, it is clear that the trial court must be affirmed. Appellant concedes that the trial court's interpretation of paragraph 8 of the will, which disposed of the property on the northwest corner of the square in Indianola, was correct insofar as the rule against perpetuities is concerned. As no other party has appealed, we are not called upon to consider this question. For

the purposes of this case, that determination is a finality. Accordingly, the only paragraphs of the will which we are called upon to consider at this point are paragraphs 5, 7, 9, and 10. None of them violates section 10127 as construed by this court.

Paragraphs 5 and 7 provide for various life estates. Though some of the life estates are contingent, the vesting of no life estate is postponed beyond the termination of a life now in being. The remainder to Simpson College is a vested remainder in each instance. Paragraph 9 provides for similar life estates with a vested remainder to the children of Helen Adams. Paragraph 10 provides for various contingent life estates and contingent remainders, but the vesting of no life estate or remainder is postponed beyond the termination of a life now in being. Accordingly, the trial court was right in holding that paragraphs 5, 7, 9, and 10 of the will do not violate the rule against perpetuities.

█ II. This brings us to the other contention advanced by appellant, namely, that the remainder to Simpson College, provided for in paragraph 8 of the will which the trial court held to be void, should be now treated as intestate property and not controlled by the residuary clause. In some respects appellant's argument would seem to be persuasive. It takes the testator literally at his word. The residuary clause purports to dispose of "the property not above referred in any paragraph of this will." The remainder to Simpson College is referred to in paragraph 8. Accordingly, it might be logically reasoned that the residuary clause is not applicable thereto. But the solution is not that simple.

This will is not skillfully drawn. Counsel assert that it was prepared and executed by the decedent without the aid of legal advice. Much of the language used would so indicate. Paragraph 1 names the son executor but designates him "administrator." Paragraphs 2 and 3 give the son a life estate in all property not otherwise disposed of, but the language used is unconventional and a bit awkward. Throughout the will, reference is made to "heirs" when it is obvious that decedent meant beneficiaries under the will. Life estates are created by devising the net income of real estate. Remainders are created by provisions that "the property is to go to" certain beneficiaries

or that they "inherit the property." Similar comment might be made as to other provisions.

In Anderson v. Anderson, 227 Iowa 25, 31, 286 N. W. 446, 449, we state:

"It is unquestioned by any of the parties that in construing a will the principal concern should be to ascertain and determine the intention of the testator, and that it is the duty of the court, if it be reasonably possible, to give effect to all of the will's provisions."

Many cases could be cited to the same effect. · It would seem to be presumptuous to do so. The rule is too well settled to require it.

Appellant's contention, carried to its logical conclusion, would render the residuary clause meaningless. Paragraphs 2 and 3 give the appellant a life estate in all of testator's property not otherwise disposed of. These paragraphs refer to all of the estate. Strictly speaking, there is no property "not above referred in any paragraph of this will." Accordingly, so interpreted, the residuary clause is meaningless. But the trial court considered it to be its duty to determine the intention of the testator and, if it be reasonably possible, to give effect to all of the will's provisions. It performed that duty by determining that the testator meant "disposed of" when he used the words "above referred" in the residuary clause. With the clause thus interpreted, the court was able to give effect to the intention of the testator and to all of the will's provisions. Only by so doing could that be accomplished. We agree with the trial court.

By reason of the foregoing, the cause must be, and it is,— Affirmed.

All JUSTICES concur.