REUBEN B. STRAW *et al.* Appellees, *vs.* FRANK J. BARNES *et al.* Appellants.

*Opinion filed June 20, 1911.*

1. WILLS—*natural heirs will not be disinherited by dubious words.* Natural heirs will not be disinherited by dubious and ambiguous words used by the testator in the will.

2. SAME—*word "or" is ordinarily used as a disjunctive word.* While the word "or" may sometimes be read as "and," it is ordinarily used as a disjunctive word, and will be so treated unless it appears to be contrary to the testator's intention.

3. SAME—*devise to "brothers and sisters or their heirs" construed.* Where a testator, having no children and having made provision for his wife, gives the residue of his property to his "brothers and sisters or their heirs," the devise will be held to include the heirs of a deceased brother and sister whose deaths had taken place before the testator executed his will, where such construction carries out the apparent scheme of the testator, viewed in the light of the surrounding circumstances, and there is nothing to indicate a contrary intention.

APPEAL from the Circuit Court of Carroll county; the Hon. OSCAR E. HEARD, Judge, presiding.

WILLIAM N. CRONKRITE, and JOSEPH H. VINCENT, for appellants.

COOK & COOK, and JOHN R. CONNELL, for appellees.

Mr. JUSTICE HAND delivered the opinion of the court:

This was a bill in chancery filed by Reuben B. Straw in the circuit court of Carroll county against the widow, brothers, sisters, nephews and nieces and grand-nieces of Nathaniel H. Straw, deceased, his brother, for the partition of certain real estate situated in Carroll county of which Nathaniel H. Straw died seized. Answers and replications were filed and the cause was referred to a master to take the proofs, and the court entered a decree finding that the brothers and sisters of said Nathaniel H. Straw, deceased,

who survived him, took by devise from the testator all of the real estate of which he died seized, with the exception of the real estate which was devised to the widow and one small tract of land which he had purchased subsequent to the date of the will, which was held to be intestate property, and entered a decree for the partition thereof among said surviving brothers and sisters, and the appellants have prosecuted this appeal.

The facts involved in this controversy, in brief, are as follows: Nathaniel H. Straw was a justice of the peace and retired farmer who had lived in Carroll county for many years and had accumulated a considerable estate, consisting, at his death, of real and personal estate of about the value of $30,000. On the 11th day of December, 1893, he executed a holographic will, which, omitting the formal parts, reads as follows:

"*First*—I order and direct that my executors hereinafter named pay all my just debts and funeral expenses as soon after my decease as conveniently may be.

"*Second*—After the payment of such funeral expenses and debts, I give, devise and bequeath to my wife, Susan E. Straw, the house where we live, with all in the house, of every kind and nature, except the money and notes, and the east half of the north-east quarter section 14, town 25, range 6.

"*Third*—The west half of the north-east quarter section 14, town 25, range 6, to my brothers and sisters or their heirs; also the house and lots in Shannon & Bradshaw's addition to the village of Shannon, being lots (1) one and (4) four in block 4, and also lot (3) three, in block (9) nine, same addition; then $2000 to my brothers and sisters or their heirs; then out of the balance, when collected, my wife is to have one-half, the other half to my brothers and sisters or their heirs.

"*Lastly,* I make, constitute and appoint Reuben B. Straw and Susan E. Straw, my wife, to be executors of this my last will and testament, hereby revoking all former wills by me made."

The testator died on the 11th day of January, 1910, whereupon said will was admitted to probate in the county court of Carroll county and Reuben B. Straw qualified as executor. At the time of his death Nathaniel H. Straw left him surviving Susan E. Straw, his widow; Reuben B.

Straw, Joseph F. Straw and Emma Sherretts, his brothers and sister of the full blood; Sarah Tures, Lillian Butter-field, Delmar Straw, John Straw and Mabel Buckingham, his brothers and sisters of the half blood; Ella Shoals, Harry Straw and Ethel Williams, the son and daughters of William H. Straw, a brother of the full blood, who had predeceased the testator by twenty-five years; Minerva E. Beaver, Frank Barnes, Robert S. Barnes and Senada G. Linder, the sons and daughters of Lydia Barnes, a sister of the full blood, who had predeceased the testator about twenty-two years; and Luella McBride and Rosella Mc-Bride, the daughters of Etta McBride, a deceased daughter of William H. Straw, deceased, who died three years prior to the death of Nathaniel H. Straw, as his sole and only heirs-at-law.

The sole question in this case is as to the proper interpretation and construction to be placed upon the words "my brothers and sisters or their heirs," found in the third paragraph of the will. The eight brothers and sisters,—three of the full blood and five of the half blood,—were all living at the date of the will and at the date of the death of the testator, and the trial court held that the words "my brothers and sisters or their heirs," found in the third paragraph of the will, only included the brothers and sisters of the testator who survived him, and gave to those brothers and sisters the entire estate, to the entire exclusion of the children of the brother William H. Straw and the children of the sister Lydia Barnes, it being the theory of the decree entered by the court that the children of the deceased brother and sister who had died before the date of the execution of the will and the date of the death of the testator were excluded from a participation in the distribution of the estate of Nathaniel H. Straw, deceased. We do not agree with the construction placed by the court upon those words. To so construe those words is to entirely eliminate from the will the words "or their heirs," unless those words be

limited to the children of the brothers and sisters who were living at the date of the execution of the will and who should die between the date of the will and the date of the death of the testator. We see no valid reason for so limiting those words. The testator knew his brother William and his sister Lydia were both dead at the time he made his will, leaving them surviving children. The deceased brother and sister were of the full blood, and we are unable to discover why the testator should make provision, in the event of his death, that his nephews and nieces and grand-nephews and nieces of the half blood should enjoy his bounty to the exclusion of his nephews and nieces of the full blood. The children of William and Lydia, upon the death of Nathaniel H. Straw, would be the natural heirs, in part, of the testator and entitled to share in the distribution of his estate unless by his will he clearly made it manifest that he intended to disinherit them. Natural heirs will not be disinherited by dubious and ambiguous words. *Olcott* v. *Tope,* 213 Ill. 124.

Numerous cases have been cited by the appellees where deceased brothers and sisters and children and their heirs have been held to have been excluded by expressions found in wills which are somewhat analogous to the language found in this will, but none of those cases are directly in point and we do not think any of them are controlling in this case. No two wills are precisely alike, and the conditions which surround one testator may differ so widely from those which surround another that the conclusion reached in one instance is of little value as a guide in another. (*Dee* v. *Dee,* 212 Ill. 338.) It is to us obvious that the testator, being childless, after he had made ample provision for his widow, desired that the remainder of his estate should be equally divided among the members of his family,—that is, between his brothers and sisters, if living,—and if one or more were dead at the time he made the will or should die subsequent to the date of his will and prior

to his death, that the children of such deceased brother or sister should take the parent's share. Had the word *and* been used instead of the word *or,* the meaning of the will would, perhaps, be more doubtful and probably susceptible to the construction placed thereon by the chancellor. While the word *or* will sometimes be read as *and,* ordinarily it is used as a disjunctive rather than as a conjunction, and in this case the word should, we think, be given its ordinary meaning, the result of which is, there are two classes of beneficiaries designated in the will, viz., first, the brothers and sisters of the testator; and secondly, the heirs of the brother and sister of the testator who predeceased the testator. The construction placed upon the words "my brothers and sisters or their heirs" by the appellants, we are satisfied, when the whole will is considered in connection with the circumstances which surrounded the testator at the time he made the will, does justice to all parties in interest and fully effectuates the intention of the testator as expressed in his will, while the construction contended for by the appellees we think strained and unnatural and one which works a great injustice to the children of William H. Straw and Lydia Barnes.

From a careful study of this record we have reached the conclusion that the circuit court erred in so construing the will as to exclude the children of William H. Straw, deceased, and the children of Lydia Barnes, deceased, from participating in the division of the estate of Nathaniel H. Straw, deceased.

The decree of the circuit court will therefore be reversed and the case will be remanded to the circuit court for further proceedings in accordance with the views herein expressed.                                   *Reversed and remanded.*