LEO HENKEL et al., Appellants, v. KATHERINE AUCHSTETTER et al., Appellees.

No. 47483.

(Reported in 39 N.W. 2d 650)

November 15, 1949.

Donnelly, Lynch, Lynch & Dallas, of Cedar Rapids, and Hollerich & Hurley, of LaSalle, Illinois, for appellants.

Van Oosterhout, Te Paske & Rens, of Orange City, for appellees.

BLISS, J.—This appeal involves the determination of the uniformly troublesome question—under our decisions—of whether a remainder is vested or contingent.

From the facts, as properly pleaded in the amended petition and exhibits attached, it appears that: the testator, Christoph Henkel, was a resident of Lee County, Illinois, at and before his death on November 23, 1895, at the age of fifty-seven years; he was survived by his widow, Maria Anna Henkel, his son, George, and three daughters, Catherine Bauer, Maria Juliana Auchstetter and Elizabeth Auchstetter; at the time of his death

at his home in Lee County, Illinois, his family consisted of himself, his wife, his daughter Maria Juliana and her husband and child; not being well physically, the testator, on March 29, 1895, had a lawyer at Mendota, Illinois, active in the practice, skilled in the drafting of legal instruments, having an extensive probate practice, draft his last will and testament, which he duly executed; at that time, the testator was the owner in fee simple of his homestead farm of one hundred thirty-five acres, and also three acres of timberland, all in said Lee County, and of several hundred acres of farm land in Sioux County, and Ida County, Iowa; at that time his daughter Maria Juliana and her child were living in his home, and he was more intimately associated with them than with his other children and grandchildren, who were all residents of Iowa; at the time the testator's will was executed, each of his four children were married and each of them had living children except Elizabeth Auchstetter, to whom no child was ever born; testator's will was admitted to probate in Lee County, Illinois, on December 6, 1895, and as a foreign will in Sioux County, Iowa, on April 8, 1909; the testator had many times stated that it was his intention to so dispose of his property that after his death it would not go to his in-laws but should be kept within his own family.

Testator's will, set out in exhibit made a part of petition, provided in substance as follows:

1st Directed the payment of his debts and funeral expenses and erection of a monument at his grave;

2d Gave to his son, George, the use and income of eighty acres of land in Sioux County for life, "and after his death the same shall go to his children of his first wife forever".

"3rd I give and bequeath to my beloved wife Maria Anna Henkel the use and income of all the rest of my estate, real and personal or mixed, wheresoever and whatsoever the same may be at the time of my death, during her natural life, all of which shall be in lieu of dower, and after her death all shall be divided as follows:

"4th To my daughter Catharina Bauer [land in Ida County, Iowa, describing it], containing two hundred (200) acres more or less, to have and to hold to herself or her children forever.

"5th To my son George A. Henkel [land in Sioux County, Iowa, describing it], containing two hundred (200) acres more or less, to have and to hold the same for himself or his children forever.

"6th To my daughter Elisabeth Auchstetter [land in Sioux County, Iowa, describing it], containing two hundred (200) acres more or less, to have and to hold to herself or her heirs at law forever.

"7th To my daughter Maria Juliana Auchstetter [land in Lee County, Illinois, describing it], containing one hundred and thirty-five (135) acres more or less, also three acres of timber land * * * to have and to hold to herself and her children forever.

"8th All the balance of my estate if any after my said wife's death, shall be equally divided among my said four children or their heirs at law."

The only real estate involved in this action is that devised to Elizabeth Auchstetter in the "6th" paragraph of the will. The controversy is whether Elizabeth took a vested remainder in the land or whether the remainder was contingent upon her surviving her mother. The life use and income of testator's property, after compliance with the "1st" and "2nd" paragraphs of the will, which was given to his widow in the "3rd" paragraph, terminated with her death on May 29, 1915.

Testator's daughter Elizabeth had married Peter Auchstetter in January 1888. She was childless when the will was made. She did not survive her mother, but died testate on February 2, 1914, survived by her husband, Peter Auchstetter, but with no child born to her. On March 13, 1908, Elizabeth Auchstetter executed her will, appointing her husband, Peter, as executor and devising and bequeathing to him "his heirs and assigns forever * * * all my estate, real, personal, or mixed, whatsoever and wheresoever the same may be at the time of my death." Her will was admitted to probate in LaSalle County, Illinois, on March 12, 1914, and Peter Auchstetter, the qualified executor, alleged that the testatrix died seized of the real estate described in the "6th" paragraph of the Christoph Henkel will. On June 24, 1914, the will of Elizabeth Auchstetter was admitted to probate as a foreign will in Sioux County, Iowa.

After the death of Maria Anna Henkel, the testator's widow, Peter Auchstetter took possession of said land under the belief that Elizabeth Auchstetter had been devised a vested remainder therein by her father's will, which estate had passed to him by the will of Elizabeth. Peter Auchstetter retained the uninterrupted possession and use of said land until 1936. After the death of Elizabeth, Peter Auchstetter married the defendant Katherine Auchstetter and on or about March 24, 1936, in an attempt to make a gift to his wife and to create a joint tenancy in said real estate Peter and Katherine joined in the execution of a deed conveying it to one Lauer, who, on the same day, reconveyed the said land to Peter Auchstetter and Katherine Auchstetter, husband and wife, as joint tenants with right of survivorship. Thereafter they jointly possessed and used the land, through tenants, until the death of Peter Auchstetter in 1948. The defendant Katherine Auchstetter claims title and ownership of the land as the surviving grantee in said deed from Lauer.

On the death of Elizabeth Auchstetter February 2, 1914, her sole heir was her mother, Maria Anna Henkel. When the latter died intestate on May 29, 1915, a resident of Mendota, Illinois, her heirs and the heirs of Elizabeth Auchstetter, determined as of that date, were the same persons, namely, Maria Juliana Auchstetter, Catherina Bauer (who died intestate on June 12, 1935), and the seven children of George A. Henkel (who died August 21, 1907).

The plaintiffs and the three defendants, other that Katherine Auchstetter and Fred Fischer, and Maria Juliana Auchstetter, only living child of the testator, are the living descendants of Catherina Bauer, and of George A. Henkel. In paragraph 3 of their petition, they allege: "That the plaintiffs base their claim to ownership to the real estate * * * on the fact that the will of Christoph Henkel * * * devised only a contingent remainder in the real estate to Elizabeth Auchstetter and, by reason of her death prior to that of the life tenant, no interest ever vested in her, but instead vested in her heirs at law as provided by the will * * *."

The motion to dismiss the petition was based upon three grounds. The court overruled the first and third grounds and sustained ground two which alleged: "That the petition of the

plaintiffs shows * * * that the rights of the parties in and to the real estate * * * depend entirely upon the construction of the last will of Christoph Henkel and particularly as to whether the devise to Elizabeth Auchstetter * * * gave to her a vested or a contingent remainder in and to said * * * real estate. That, as a matter of law, under the statutes and decisions of * * * Iowa, * * * Elizabeth Auchstetter was devised * * * a vested remainder in and to said real estate, and said petition shows * * * that Katherine Auchstetter is the successor to the title and interest of Elizabeth Auchstetter in said premises, and that the plaintiffs have no right, title or interest in and to said real estate whatsoever."

The only error assigned by plaintiffs is the ruling of the court sustaining said ground two of defendants' motion to dismiss the petition. Defendants also assert that the assigned error embraces the only issue and question for determination by this court.

I. Because of some typing errors and faulty punctuation in the transcript of the Illinois probate proceedings filed in the office of the Sioux County clerk of the district court at the time the testator's will was there admitted to probate, and because of the use made of the words "and" and "or" in the paragraphs of the will, the trial court criticized the will as being carelessly drawn. The court expressed the conclusion therefrom, thus: "If we assume that he thus intentionally and understandingly used the words 'or' and 'and', then we must assume that the testator intended to discriminate between his children; which assumption is not sustained by the provisions of the will as a whole * * *."

Defendants make similar criticisms in their argument. The matters criticized are of little consequence. They are made only as affording some foundation for the appellees' contention that in the "6th" paragraph of the will the testator, or his lawyer, carelessly, inadvertently, or unintentionally, used the word "or" in the last six words of the paragraph, instead of the word "and", which they insist was the word the testator actually intended to use. And defendants ask this court, not to accept and construe the will as executed, but to change it by striking the word "or" and substituting the word "and". They have presented neither facts nor law to sustain their proposition.

The one who drew the will was a lawyer skilled in the work he was doing. We may assume that he accurately and understandingly put into the instrument the instructions he received from the testator. The latter had accumulated a large estate. There is no basis for assuming he was illiterate. The will contained no word that was not plain, simple and easily understood.

In the absence of any showing to the contrary, we are to assume that the testator selected language adapted to express his meaning, and that he knew and appreciated the effect of the language used in the will. Beedy v. Finney, 118 Iowa 276, 282, 91 N.W. 1069; Harvey v. Clayton, 206 Iowa 187, 197, 220 N.W. 25; Baker v. Elder, 223 Iowa 395, 397, 272 N.W. 153; McClintock v. Smith, 238 Iowa 964, 968, 29 N.W. 2d 248. The court will also presume that the testator had knowledge of the applicable law. McClintock v. Smith, Harvey v. Clayton (both cited just above and on the same pages) and In re Will of Kielsmark, 188 Iowa 1378, 1387, 177 N.W. 690, 11 A. L. R. 156.

"The will must be construed as written, all words therein contained being given effect so far as possible." 69 C. J., Wills, section 1126, page 71.

"In the absence of language evidencing a contrary intention, a testator is presumed to use the words in which he expresses himself in his will in their primary or ordinary sense." 69 C. J., Wills, section 1128, page 73.

"It is uniformly presumed that the words of the will are used in their natural, usual, popular and conventional meaning." In re Estate of Syverson, 239 Iowa 800, 807, 32 N.W. 2d 799, 802.

"It is a universally accepted rule of the construction of wills that the words of the testator will be given effect according to the approved usage of the language * * *. Upon what sound principle of construction shall the court say the testator did not mean precisely what he said?" Anderson v. Wilson, 155 Iowa 415, 418, 419, 136 N.W. 134, 135.

"A will must be read in the ordinary and grammatical sense of the words employed, unless some obvious absurdity or some repugnance or inconsistency with the declared intention of the testator as extracted from the whole will should follow from so reading it. Riegel et al. v. Oliver et al., 352 Pa. 244, 247, 42 A. 2d 602 [161 A. L. R. 177]. The question, in construing or ex-

pounding a will, is not what the testator may have meant but what is the meaning of the words actually used. Myers Estate, 351 Pa. 472, 474, 41 A. 2d 570 * * *." Fidelity-Philadelphia Tr. Co. v. Klinger, 162 Pa. Super. 294, 296, 57 A. 2d 608, 609.

See also In re Will of Hagan, 234 Iowa 1001, 1007, 14 N.W. 2d 638, 152 A. L. R. 1296; In re Estate of Eason, 238 Iowa 98, 103, 26 N.W. 2d 103. "Every part of the will should be given effect." Aultman v. Meyers, 239 Iowa 940, 946, 33 N.W. 2d 400, 403. The testator must be considered to have used language with ordinary intelligence and as not having adopted different modes of expression without intending difference of meaning. Edgar County Children's Home v. Beltranena, 402 Ill. 385, 84 N.E. 2d 363.

██ It is true we have held that in order to ascertain the intent of a testator and give it effect it is sometimes permissible to disregard superfluous words or to add or transpose words. Layton v. Tucker, 237 Iowa 623, 626, 23 N.W. 2d 297. But this must not be done arbitrarily or to gratify a whim or fancy, or when the meaning is clear or unequivocal. In Taylor v. Taylor, 118 Iowa 407, 410, 92 N.W. 71, 72, a case in which the facts are very similar to those in the case on appeal, this court was urged to treat "or" as "and" in construing a will. In refusing, the court, speaking by Chief Justice Ladd, said:

"But we are not permitted to reject clauses, nor arbitrarily to substitute one word for another. *This can only be done when imperatively demanded in order to carry out the intentions of the testator.* [Italics ours.] In Griffith's Lessee v. Woodward, 1 Yeates, 318, it was said: 'Courts of justice will transpose the clauses of a will and construe "or" to be "and" and "and" to be "or" only in such cases when it is absolutely necessary so to do to support the evident meaning of the testator. But they cannot arbitrarily expunge or alter words without such apparent necessity.' "

██ II. Defendants set out brief points containing some rules for construing wills involving controversies over remainders. One of these is the oft-repeated rule that courts are inclined to hold a remainder to be vested rather than contingent if it can be done without manifest violation of the testator's intention.

Plaintiffs do not question the rule but insist that it has no application because to hold that Elizabeth Auchstetter took a vested remainder is plainly contrary to the testator's intention. The favoritism for the vesting of remainders came about in order to nullify the many burdensome technicalities of the feudal system with respect to contingent remainders. Many of the reasons which generated the favoritism have long been nonexistent. It is no longer an important rule of construction, and should not be. As said by Justice Evans in Fulton v. Fulton, 179 Iowa 948, 966, 162 N.W. 253, 258, L. R. A. 1918E 1080: "The dominant rule of construction with us is that the intent of the testator, as it is fairly gathered from the will, must prevail. *Even the presumption in favor of a vested remainder is one which obtains only in support of the statute against perpetuities.*" (Italics ours.)

An excellent treatise on the whole subject may be found in volume 3 (Future Interests) William F. Walsh's "Commentaries on the Law of Real Property" (1947). In section 293, pages 98, 99, the author states:

"This presumption in favor of vesting was important while contingent remainders were held to be inalienable and subject to defeat by the destruction or natural termination of the prior life estate which supported the remainder. These rules were highly technical and unreasonable, and therefore to escape them the law was said to 'favor' the vesting of estates which was simply a vague way of expressing the presumption in favor of vesting in all cases of doubt, holding that the condition was subsequent and the remainder vested subject to be divested by the happening of the condition, so that it could be conveyed and was not subject to defeat by the termination of the prior life estate. As contingent remainders are no longer destructible except by the happening of the condition to which they are subject and may be conveyed as freely as vested remainders in England, New York and practically all the other states, the reasons for this presumption in favor of vesting under modern law are quite different. In most of the situations in which the question has arisen it has been quite immaterial whether the remainder is contingent because subject to a condition precedent or is vested

subject to be divested by the happening of the same contingency as a condition subsequent, as the results will be the same in either case."

The same author (volume 3, section 303, page 154) states:

"Contingent remainders, in common with contingent future executory interests, may now be conveyed as freely as vested remainders by virtue of statutes enacted in * * * most of the states [over thirty states are listed in the footnote], provided there is a remainderman to make the conveyance." And in section 305, pages 172, 174, it is stated: "The effect of the modern statutes and decisions has been to remove most of the practical differences between vested and contingent remainders in most states. * * * Contingent remainders may be conveyed, devised and inherited as freely as vested estates. In most of the cases cited and discussed in the foregoing sections the question of whether the remainders were vested or contingent was quite immaterial, the courts having discussed at great length and with much labor, questions which had nothing to do with the decision of the matter involved."

Some leading cases are noted as illustrative examples.

The applicable statutes of Iowa are not as broad and inclusive as those of many states. Section 557.3, Code, 1946 (Code of 1851, section 1201) provides that, "Every conveyance of real estate passes all the interest of the grantor therein, unless a contrary intent can be reasonably inferred from the terms used." Section 557.6, Code, 1946 (Code of 1851, section 1204) is: "Future estates. Estates may be created to commence at a future day." See also sections 557.8 and 557.9 of said Code. Iowa is noted (footnote, page 155 of 3 Walsh, supra) as one of the number of states whose courts have held that contingent future interests are alienable without the aid of any statute, citing Noonan v. State Bank of Livermore, 211 Iowa 401, 233 N.W. 487. For other of our decisions showing the release of common-law restraints in the alienation of contingent remainders, see McDonald v. Bayard Saving's Bank, 123 Iowa 413, 98 N.W. 1025; State Savings Bank v. Bolton, 223 Iowa 685, 689–691, 273 N.W. 121; Saunders v. Wilson, 207 Iowa 526, 220 N.W. 344, 60 A. L. R.

786; John Hancock Mut. L. Ins. Co. v. Dower, 222 Iowa 1377, 1384, 1385, 271 N.W. 193; Bogenrief v. Law, 222 Iowa 1303, 1309–1311, 271 N.W. 229; Bahls v. Dean, 222 Iowa 1291, 270 N.W. 861; Lane v. Travelers Ins. Co., 230 Iowa 973, 977, 978, 299 N.W. 553; Peters v. Thoning, 231 Iowa 755, 762–764, 2 N.W. 2d 76.

We set out the above matters in this division on the authority of the ancient legal maxim that when the reason for a rule ceases, the rule itself should also cease.

III. As noted above, in the quotation from Fulton v. Fulton, supra, 179 Iowa 948, 966, 162 N.W. 253, L. R. A. 1918E 1080, a case involving remainders devised by will, the dominant rule of construction is the intent of the testator. General rules of construction are of little aid. "It is of prime importance that the intent of the testator be ascertained 'from the terms of the will.'" Harvey v. Clayton, supra (Justice Kindig), 206 Iowa 187, 190, 220 N.W. 25. As said in In re Estate of Clifton, 207 Iowa 71, 76, 218 N.W. 926, 928, Justice Morling speaking:

"Though trite and monotonous reiteration to say so, it must be held constantly in mind that the object of testamentary interpretation is to ascertain the purpose of the testator, and when ascertained, to give it effect, if this can be done without violating any settled rule of law. In the search therefor, the court must, as nearly as it can, take its position in the environment of the testator, and in the light of the facts known to him, and in which he wrote the will."

With reference to this cardinal rule of testator's intent, the court, by Chief Justice Weaver, in Hiller v. Herrick, 189 Iowa 668, 670, 671, 179 N.W. 113, 114, said: "It is the most familiar rule or phrase in the law of testamentary construction—but unfortunately is sometimes neglected, in the search for precedents' to sustain a desired conclusion."

There is, of course, no need for construction or rules of construction where there is no uncertainty or ambiguity in a will and its language is plain and unequivocal. In that situation the intention of the testator must be ascertained from the will itself, reading each provision in the light of every other provision, giving effect to each and every part, if reasonably possi-

ble. If the intention is thus clearly and unequivocally expressed or necessarily implied, then all other rules of testamentary construction and interpretation are inapplicable and must yield to that intention. We have so held many times. Ransom v. Mellor, 230 Iowa 451, 454, 297 N.W. 861; In re Estate of Schmitz, 231 Iowa 1178, 1181, 1182, 3 N.W. 2d 512; Anderson v. Anderson, 227 Iowa 25, 31, 32, 286 N.W. 446; In re Will of Hagan, 234 Iowa 1001, 1007, 14 N.W. 2d 638, 152 A. L. R. 1296; Boiler v. Wilson, 239 Iowa 1201, 1204, 34 N.W. 2d 578, 580; Sick v. Rock, 240 Iowa 584, 587, 37 N.W. 2d 305, 306; McClintock v. Smith, 238 Iowa 964, 967, 968, 29 N.W. 2d 248; In re Estate of Eason, 238 Iowa 98, 103, 104, 26 N.W. 2d 103; Horak v. Stanley, 216 Iowa 318–320, 249 N.W. 166; In re Estate of Syverson, 239 Iowa 800, 804, 805, 32 N.W. 2d 799, 801, 802.

Defendants agree with the contention of plaintiffs that there is no uncertainty or equivocation in any part of the will, and definitely state in the printed argument that "the language in the will of Christoph Henkel is not ambiguous." The testator's intention is therefore found in "the meaning of the words actually used" in his will.

IV. In brief point "B" defendants define a vested remainderman thus: "When there is a person in being who would have an immediate right to the possession of the lands, should the life tenancy now terminate, such person has a vested remainder." That is the exact definition of a vested remainder which was given in the much discussed case of Archer v. Jacobs, 125 Iowa 467, 475, 101 N.W. 195, and repeated in Shafer v. Tereso, 133 Iowa 342, 347, 110 N.W. 846, although the common-law definition of a vested remainder was correctly stated in substance on pages 345 and 346. The definition in the Archer case was taken from the New York statutory definition, which was intended and was supposed to be a correct but simplified statement of the common-law definition. It was so construed by dictum in Moore v. Littel, 1869, 41 N. Y. 66, and by decision in House v. Jackson, 1872, 50 N. Y. 161. In later decisions the New York courts corrected the erroneous assumption, but, aided largely by a statement of Chancellor Kent that the definition in the New York statutes accorded with that of the common law, the statutory definition was accepted by courts in other states,

as it was in Iowa. The error was fully and clearly pointed out by this court in Birdsall v. Birdsall, 157 Iowa 363, 369–371, 132 N.W. 809, 36 L. R. A., N. S., 1121, in the opinion written by Justice McClain, and in Fulton v. Fulton, supra, 179 Iowa 948, 162 N.W. 253, L. R. A. 1918E 1080, opinion by Justice Evans.

In the Birdsall case, supra, pages 369–371 of 157 Iowa, page 811 of 132 N.W., the court said:

"The so-called New York rule seems to be that, 'when there is a person in being who would have an immediate right to the possession of the land upon the ceasing of the intermediate or precedent estate,' the remainder is vested. 4 Kent, Commentaries (14th Ed.) 202. While it seems to have been assumed when this rule was first announced in New York that the statute on which it was based was simply a brief statement of the common law rule, that idea has now been definitely abandoned in that state and elsewhere. As a common law definition or description of a contingent [vested] remainder it is subject to the qualification that the person in being must be one whose right to ultimately enjoy the remainder is fixed and certain during the pendency of the particular estate. Golladay v. Knock, 235 Ill. 412 (85 N.E. 649, 126 Am. St. Rep. 224). * * * We have no statute in this state in any way analogous to that on which the New York rule was predicated, and the definition and characteristics of a contingent remainder must be determined by the common law. * * * We find nothing, therefore, in the prior decisions of this court indicating an intention to adopt the New York rule as a correct description of a vested remainder as applied to the facts of this case."

In the Fulton case, supra, page 961 of 179 Iowa, page 257 of 162 N.W., the court said: "In this state, the common-law rule presumptively prevails. We have no statute similar to that of New York."

The acceptance of the New York statutory definition of a vested remainder by this court in the Archer case, as coinciding with the common-law definition has resulted in much confusion and inconsistence in the decisions of this court involving remainders in real estate. Defendants rely upon Flanagan v. Spalti,

225 Iowa 1231, 1235, 282 N.W. 347, 349, opinion by Justice Kintzinger, and quote therefrom as follows: "This court has consistently held in a long line of cases that; 'when there is a person in being who would have an immediate right to the possession of the lands, should the life tenancy now terminate, such person has a vested remainder.'" Cited in the opinion in support of the statement are Archer v. Jacobs, supra, 125 Iowa 467, 475, 101 N.W. 195, Fulton v. Fulton, supra, 179 Iowa 948, 162 N.W. 253, L. R. A. 1918E 1080, and other Iowa decisions. The Archer case supports the quotation, but the Fulton case and others of the citations do not.

Under the quoted statement, not only might a vested remainderman have a right to the immediate possession of the lands on the termination of the life tenancy, but so also would a contingent remainderman if the contingency was his survivorship of the life tenant and he survived him. *A remainder cannot be both vested and contingent.* In Fulton v. Fulton, supra, 179 Iowa 948, 957, 958, 162 N.W. 253, 256, the opinion states:

"The common-law definition of remainders may be stated briefly as follows:

'Remainders are either vested or contingent. A vested remainder, whereby the estate passes by the conveyance, but the possession and enjoyment are postponed until the particular estate is determined, *is where the estate is invariably fixed to remain to certain determinate persons.* Contingent remainders are where the estate in remainder is limited to take effect either to a dubious or uncertain person or upon a dubious or uncertain event, so that the particular estate may be determined and the remainder never take effect.' [Italics ours.]

"In 1830, the legislature of New York adopted a statutory rule as follows:

'Future estates are either vested or contingent. They are vested when there is a person in being who would have an immediate right to the possession of the land upon the ceasing of the intermediate or precedent estate. They are contingent whilst the person to whom or the event upon which they are limited to take effect remains uncertain.'"

It may be observed that under both the common law and the New York statute there is no difference in the respective definitions of a contingent remainder, also that under the common law and under the statute remainders are *either* vested or contingent. But notwithstanding, under the statute, a contingent remainder may qualify as a vested remainder under the statutory definition of the latter, as we have noted above. But this is not true under the common-law definition of a vested remainder. The very important difference between the common-law definition of a vested remainder and the New York statutory definition of it is the absence of the italicized words noted above in the first from the latter. An "estate is invariably fixed to remain to certain determinate persons", according to Webster's New International Dictionary, when it is constant, not given or subject to variation, unchangeably fixed in certain definitely settled persons.

The fallacy of the position of defendants under their said brief point and in their reliance upon the quotation from Flanagan v. Spalti, supra, 225 Iowa 1231, 1235, 282 N.W. 347, may be readily illustrated. Suppose land is conveyed by deed or devised by will to A for life, with remainder to his heirs. No one could reasonably be expected to contend that the estate given to any such heir was a vested remainder under common law. Any such remainder must be contingent because until the life tenant dies there is no one who answers the description of the deed or will in whom a remainder can vest. Each of those is a dubious or uncertain person. No one of them could qualify as an heir of the life tenant until the latter died. And yet under the New York statute, as it was first construed by the courts of that state, and under Archer v. Jacobs, supra, 125 Iowa 467, 101 N.W. 195, or under the rule quoted above from Flanagan v. Spalti, supra, 225 Iowa 1231, 282 N.W. 347, or under defendants' brief point "B", on the execution of the deed or the will, any child or heir-presumptive of the life tenant then living or who was thereafter born, in either event was at once endowed with the unchangeable right and status of an heir of the life tenant indefeasible by any contingency, and regardless of whether his death thereafter was before or after the death of the life tenant.

Before a person's death he has no heirs. A remainder to his presumptive heirs is subject to the condition precedent that they survive him as life tenant. We so held in Lincoln Joint Stock Land Bank v. Mitchell, 239 Iowa 995, 1000, 33 N.W. 2d 388, 391. See the opinion therein for supporting authorities cited, including Restatement of the Law, Property, section 249, and Westcott v. Meeker, 144 Iowa 311, 122 N.W. 964, 29 L. R. A., N. S., 947.

Our decisions have not been harmonious on the matter of the definition of a vested remainder, but since the decisions in Birdsall v. Birdsall, supra, 157 Iowa 363, and Fulton v. Fulton, supra, 179 Iowa 948, the tendency of our decisions and the greater number of them have been favorable to the common-law definition. Since Iowa has no statutory definition of remainders the common-law definition of a vested remainder should be accepted by the courts and followed. This is especially true since the New York statute was intended to coincide with the common-law definition, but failed to do so, and it is now so held by the courts of that state. It was because of the same misapprehension that the statutory definition of New York was followed in Archer v. Jacobs, supra.

The recommendation of Justice Evans in Fulton v. Fulton, 179 Iowa 948, 961, 162 N.W. 253, 257, is wholesome and sound, to wit:

"The foregoing is a sufficient indication of the presence in the body of the law of two differing rules or definitions of vested and contingent remainders. These conflicting rules, through oversight of their divergence, have become the occasion of confusion. In order to avoid further confusion, the fact that two rules are running at large among the decisions should be borne in mind; the distinction between them should be observed; and one of them alone should be adopted and consistently followed."

Under the conflicting decisions on the subject matter in our reports the lawyers have no sound guide in advising their clients. This situation is unfair to the legal profession, to the district judges, and to the public. In Skelton v. Cross, 222 Iowa 262, 268, 268 N.W. 499, 503, 109 A. L. R. 129, the court reviewed the conflicting views of preceding members of the court on this

question, and referred to the criticism and repudiation of the New York rule adopted in Archer v. Jacobs, in the Fulton case, in Saunders v. Wilson, supra, 207 Iowa 526, 220 N.W. 344, 60 A. L. R. 786, in In re Estate of Phearman, 211 Iowa 1137, 1144, 232 N.W. 826, 82 A. L. R. 674, and in Williamson v. Youngs, 200 Iowa 672, 677, 203 N.W. 28, and the court with seven members concurring and no dissent decided that it "would only render the confusion all the more confounding" to return to the rule of Archer v. Jacobs. In Blair v. Kenaston, 223 Iowa 620, 626, 273 N.W. 184, the court referred to Skelton v. Cross, supra, 222 Iowa 262, for definitions of remainders there given. In Smith v. Harris, 227 Iowa 127, 133, 287 N.W. 255, the language in Skelton v. Cross, supra, quoted above, was referred to with approval. In Sick v. Rock, 240 Iowa 584, 588, 37 N.W. 2d 305, 307, opinion by Chief Justice Mantz, the court stated the common-law definition of a vested remainder as given in Fulton v. Fulton, supra, and in In re Estate of Phearman, supra, written by Justice Wagner, and then said: "We need not discuss the difference between the common law and the New York statutory definitions discussed in some of the cited cases. That distinction is not important here." In In re Estate of Organ, 240 Iowa 797, 801, 38 N.W. 2d 100, 103, opinion by Justice Oliver, the opinion gives the substance of the definitions of a vested remainder and a contingent remainder, as stated in Fulton v. Fulton, supra, and Skelton v. Cross, supra, and follows with this statement:

"These definitions have been approved in various recent decisions. See 32 Iowa L. Rev. 743; Lincoln Joint Stock Land Bank v. Mitchell, 239 Iowa 995, 1000, 33 N.W. 2d 388, 391; Anderson v. Conklin, 229 Iowa 232, 236, 294 N.W. 339; Smith v. Harris, 227 Iowa 127, 287 N.W. 255. Under these definitions the remainder here in question was contingent because it was limited to take effect to an uncertain person or persons. Because Richard Organ predeceased the life tenant no interest in the remainder ever vested in him."

There was a dissent to the opinion, but it was on the ground that a fee simple title was devised in paragraph IV of the will

and that it was not defeated by the trust provision in paragraph V of the will.

The proposition urged by defendants' brief point "B" does not rule the decision in this case and for that reason might have been passed over without discussion, but decisions of this court giving support to the brief point were cited and argued by defendants, and they were entitled to answer from us. It is our judgment that the brief point is without merit, and that under the decisions of this court the common-law definition and description of a vested remainder has been accepted and is the law of this state.

V. Plaintiffs contend that the decision in Taylor v. Taylor, 118 Iowa 407, 92 N.W. 71, is controlling in this case and fully sustains their position that the remainder given to Elizabeth Auchstetter "or her heirs at law" after the termination of her mother's life estate was contingent and not vested. There is merit in their contention. Accepting the devise as made by the testator, as we must under the record, it gave an alternative devise of the remainder to Elizabeth *or* her heirs at law. Under the plain, definite and unambiguous language of the devise the remainder was not given to both Elizabeth and her heirs. Both of them could not take it. It passed to *either* Elizabeth or her heirs. If Elizabeth was alive at her mother's death she took the land devised absolutely as her own, but she could not take it and had no right to it unless she was living at the death of her mother, the life tenant. If Elizabeth was not living at that time then the alternative of the devise became effective, and the heirs at law of Elizabeth became entitled to the land devised as their own absolutely. Elizabeth was required to survive her mother to acquire a right to the land, and she must have preceded her mother in death before her heirs acquired such right.

The will in Taylor v. Taylor, supra, 118 Iowa 407, 409, 92 N.W. 71, gave all of testator's property, real and personal, to his wife " 'for her use and control during her widowhood, and at her decease or marriage to be equally divided between my children or their heirs as the law directs * * *.' " The testator died December 4, 1882, and his widow died without remarrying on January 20, 1900, and shortly thereafter the land was partitioned by suit among the eight children of the testator.

One Crawford had obtained a judgment against the son F. M. Taylor December 4, 1883, and one Yarnell recovered judgment against the son November 16, 1896. In June 1900, the judgment-debtor conveyed his interest in the land to Yarnell in satisfaction of the latter's judgment. The court declared Yarnell to be the owner of the share devised to the judgment debtor, as against Crawford.

In affirming, this court, through Chief Justice Ladd, said at pages 410 to 414 of 118 Iowa, pages 71 and 72 of 92 N.W.: "Reverting to the instrument under consideration, it will be seen that our conclusion necessarily depends on the effect to be given the words 'or their heirs as the law directs.' The last clause evidently means those heirs entitled to inherit under the laws of the state, and, had 'and' been written in the place of 'or,' there could have been no doubt of the testator's intention of merely creating an estate of inheritance. To treat 'or' as 'and' in construing the will would render the whole clause meaningless, as without it the fee would have passed to the children. Section 2913, Code [1897, section 557.2, Code, 1946: "The term 'heirs' or other technical words of inheritance are not necessary to create and convey an estate in fee simple."] But we are not permitted to reject clauses, nor arbitrarily to substitute one word for another. This can only be done when imperatively demanded in order to carry out the intentions of the testator. * * * Nothing in the wording of the will or the situation of the parties indicates that the disjunctive 'or' was by mistake made use of instead of the conjunctive 'and', or that it was not designedly employed to express the real intention of the testator. * * * On this subject Judge Redfield, in his work on Wills, says: 'There is also a class of cases, somewhat numerous, where the word "or" is interposed between the name of the first legatee or devisee and the heirs of such person,—as, to A or his heirs, forever, or in tail,—in regard to which there has been considerable discussion, and where there does not seem to be perfect coincidence. * * * The cases where the word "or" being interposed between the name of the first devisee or legatee and his heirs has been held to indicate the intention of substituting the latter in place of the ancestor are numerous, and, being more recent, as a general thing, and more in consonance with the words used, must

be regarded as defining the most reliable rule.' 1 Redfield, Wills, 486. In Salisbury v. Petty, 3 Hare, 86, the vice chancellor held the word 'or' in this connection to mean 'in case of death of.' In Girdlestone v. Doe, 2 Sim. 225, the bequest was of an annuity, after the enjoyment of it for life by another, to James Holman 'or his heirs.' After the testator's death, and while the life tenant was living, Holman assigned his interest in the annuity to Girdlestone. Holman died before the life tenant, and after the death of the latter Girdlestone brought suit to compel payment of the annuity to him. It was held that 'or' must be construed as a disjunctive, and that, as the testator contemplated that Holman might die before the life tenant, he did not take an absolute interest in the annuity."

After citing a number of supporting authorities, the opinion cites a Kentucky case, Robb v. Belt, 12 B. Mon. 643, in which the will provided that the widow should have the use and income of the estate as long as she remained unmarried, and that on her marriage or death " 'the property is equally to be divided among my eight children, or their heirs legally begotten of their bodies.' The court held that the words 'or their bodily heirs' were to be taken as the designation of persons who were to take, or as words of purchase, and were equivalent to the words, 'or such descendants of any that may be dead or may then be their heirs,' referring to the time of the division of the estate. It was said: 'But as the testator does not say "among my living children", but "among my eight children", "or" is proper to show and does show, as to some of them, there is an alternative devise in case of their death before the time referred to, and that in that event the heirs of the bodies of the deceased are to take in place of the deceased.' " The opinion refers to Ebey v. Adams, 135 Ill. 80, 25 N.E. 1013, 10 L. R. A. 162, in which a life estate was given to the widow, with directions to sell and divide the property on her death, " 'among my children or their heirs.' " The court said:

" 'The words "heir" or "their heirs" are technically words of limitation; but in this and other cases they are used as words of purchase, and always have that operation when it sufficiently appears that the term is used to designate a particular person

or particular persons who may stand in that relation at the happening of a certain event, or at a certain period, and not to the whole line of heirs in succession. No one can have heirs while living. The word "or", therefore, as here used, indicates substitution, and the payment or distribution is to be made at a fixed period; i.e., upon the sale by the executors, after the termination of the immediate estate. It would seem clear, therefore, that the persons who are to take are such of the children as might be living at the time of the distribution, and the heirs of such as might have predeceased.' "

After further citations including McClain v. Capper, 98 Iowa 145, 67 N.W. 102, and Wilhelm v. Calder, 102 Iowa 342, 71 N.W. 214, the opinion states: "In view of these authorities the words 'or their heirs' must be regarded as words of purchase, rather than of limitation, and the intention of the testator to have been that the heirs of the children take by substitution, rather than by descent. * * * Such intention, having been clearly expressed, should be carried out."

The opinion shows painstaking study and research. It has often been cited by this court. It has never been questioned as to the principles of law stated or its reasoning or the result reached. It has been recognized as a leading authority in other jurisdictions and has been cited and quoted as a sound decision in cases like the one before us. Our decision might be rested upon it, but we call attention to other authority and decisions.

In Delaware County Trust Co. v. Hanby, 19 Del. Ch. 228, 229, 165 A. 568, the testator bequeathed a fund to plaintiff in trust to pay the income to his widow, " 'and at her death, to pay over the principal thereof in equal shares to my children [naming them] or their heirs.' " His four children survived him, but three predeceased their mother. The Chancellor said:

"Upon the death of the testator, an interest in remainder vested in his children. It was, however, a defeasible interest, because the bequest was to them 'or their heirs.' The disjunctive 'or' has the effect of creating a substitutionary bequest, whereby in the event of the death of any child before the period of distribution, the share going to that child would shift over to his or her 'heirs.' Fisher, Admr. v. Barcus, 14 Del. Ch. 324, 127 A.

53. When the 'heirs' take in such case, they take as beneficiaries under the testator's will and not in right of their ancestor. [Citing cases.] It follows, then, that the share bequeathed to each of the three children who predeceased the life beneficiary, constituted no part of the estate of the deceased child."

In Wyman v. Kinney, 111 Vt. 94, 97, 102, 10 A. 2d 191, 193, 195, 128 A. L. R. 298, the devise was quite like that in the case before us. It stated: " 'I give, devise, and bequeath to my husband * * * all my real estate and personal estate * * * during his natural life for his use and benefit, and after his decease I give and devise the same to my three daughters, Hattie, Libbie and Nellie to be equally divided among them, or their heirs.' " After the death of testatrix in 1901 her husband occupied the land until his death in 1938. During the life tenancy the husband and two of the daughters gave mortgages on the real estate. The two daughters predeceased the life tenant, and each left children who survived the life tenant. In reversing a decree of foreclosure the court said:

"From our examination of the matter it seems clear that the testatrix intended to impose the condition that the named children be living at the death of the life tenant in order that their estates vest in them in interest as well as possession and that otherwise the heirs of such as may have deceased prior to that time would take in possession what their ancestors would have taken if they had survived the life tenant. In other words, it must be considered that the testatrix intended to create as to the named children contingent and not vested remainders for when a condition of survivorship of the life tenant is imposed, the remainder thus created is one of contingency. * * * This is so because in such a case time is of the substance of the devise and the event upon which it is limited to take effect, the survivorship of one over another, is always an uncertain and dubious event. * * *

"It follows from what we have said that the named daughters had, during the life of the life tenant, only contingent remainders. The vesting of the estates in interest, as well as in possession, depended upon their surviving the life tenant. As both Libbie and Hattie died before the termination of the life estate leaving

heirs, it also follows that said daughters took no interest under the will which they could convey or encumber as against their heirs. The persons standing in relation of heirs to them took under the will as purchasers and not by descent the shares that the deceased daughters would have taken had they survived, unencumbered by the mortgages in question."

The opinion quotes at length from Taylor v. Taylor, supra, 118 Iowa 407, and also cited in support the following decisions: Bowen v. Hackney, 136 N. C. 187, 48 S.E. 633, 67 L. R. A. 440; Furnish v. Rogers, 154 Ill. 569, 39 N.E. 989; Schapiro v. Howard, 113 Md. 360, 78 A. 58, 140 Am. St. Rep. 414; Stump v. Findlay, 2 Rawle (Pa.) 168, 19 Am. Dec. 632. The plaintiff conceded that in order to hold the estates as vested it would be necessary to substitute "and" for "or". The court held that intention of testatrix as ascertained from the language employed did not justify the substitution.

In George v. Widemire, 242 Ala. 579, 583, 587, 7 So. 2d 269, 271, 274, the testator "willed" to his wife a life estate in his property real and personal and gave any residue remaining at her death to his " 'four children or their heirs.' " One daughter died before the life tenant, survived by her child and husband. In holding that the husband of the deceased daughter took no part of the share given to her by the will the court said:

"We are clear to the conclusion * * * that the testator intended to use 'or' in its usual disjunctive sense of substitution. It would seem equally clear, therefore, that the persons who are to take are such of the testator's children as might be living at the time of the distribution, and the children of such as might have predeceased. The vesting of the estate in interest, as well as in possession, in the children of the testator, depended upon their surviving the day of distribution. In other words, time is of the substance of the gift, and relates to the vesting of the legacies in interest, as well as in possession.

"It must be considered that the testator intended to create, as to his four children, contingent and not vested remainders, for where time is of the substance of the bequest and the event upon which it is to take effect, the survivorship of one over the other is always an uncertain or dubious event."

The opinion in the case just cited quoted from Taylor v. Taylor, 118 Iowa 407, and cited the following cases which gave the word "or" its usual disjunctive meaning in phrases like the one construed in that opinion, namely, Union Safe Deposit & Tr. Co. v. Wooster, 125 Maine 22, 130 A. 433; Potter v. Potter, 306 Ill. 37, 137 N.E. 425; In re Evans Will, 234 N. Y. 42, 136 N.E. 233 (opinion by Justice Cardozo); Waxson Realty Co. v. Rothschild, 255 N. Y. 332, 174 N.E. 700.

Hunsley v. Aull, 387 Ill. 520, 521–523, 56 N.E. 2d 773, 774, was a suit to partition land devised by Thomas Hunsley, first to his wife for life, and then directed that " 'at the death of my said wife * * * I give, devise and bequeath the remainder * * * *to my daughter, Olive J. Council, or her heirs, if she is not then surviving, to be her or their absolute property forever.'* " The lower court construed this clause of the will as contended for by plaintiffs. The daughter, Olive, did not survive the life tenant, and died intestate leaving no lineal descendants but was survived by her husband who also predeceased the life tenant. Her husband and her mother, brothers and sisters, and certain nephews and nieces, inherited any property she had at her death. Appellants were judgment creditors of Olive and her husband. In affirming the decree the court said:

"The decree appealed from construed the tenth clause of the will as giving the widow of testator a life estate which had terminated by death and that the remainder devised to Olive J. Council was conditional upon her surviving the life tenant and since she died prior to the date of the death of the life tenant her estate took nothing and that 'her heirs' were substituted as remaindermen taking a fee-simple title. * * * The rule is that the word 'or' when used in a will between the name of the devisee and the words 'her heirs' or 'heirs of her body' is given its ordinary meaning unless there is something in the context of the will which indicates the testator used it in a different sense. (Boys v. Boys, 328 Ill. 47, [159 N.E. 217].) When the word 'or' is given its ordinary meaning, such a clause is construed as devising the land in fee to the devisee named if she survives the event named (in this case the death of the life tenant), but if she does not survive such event, then the persons

coming within the class as 'her heirs' or 'heirs of her body' will be substituted as remaindermen and take the title in fee. Levings v. Wood, 339 Ill. 11, [170 N.E. 767]; Pearson v. Olson, 310 Ill. 252, [141 N.E. 736]; Straw v. Barnes, 250 Ill. 481, [95 N.E. 471]. Appellants rely upon cases such as Fay v. Fay, 336 Ill. 299, [168 N.E. 359]; Boys v. Boys, 328 Ill. 47, [159 N.E. 217]; Thomas v. Stoakes, 328 Ill. 115, [159 N.E. 269]; and Smith v. Dellitt, 249 Ill. 113, [94 N.E. 113]. An examination of those cases discloses that there was language used in the will that indicated the testator intended the word 'or' should be construed as 'and' or that it should not be interpreted to give it its usual and ordinary meaning. * * * There is nothing in the language used in the will in this case which will support such a conclusion. In fact, there is language which indicates that the testator intended the word 'or' in its disjunctive sense."

The only cases cited by defendants on this appeal in which "or" is given a conjunctive meaning are Fay v. Fay, Thomas v. Stoakes, and Smith v. Dellitt, supra, and all are distinguished from the general rule in the opinion in Hunsley v. Aull, supra, 387 Ill. 520, 56 N.E. 2d 773–775. See also In re Reifsteck, 71 F. Supp. 157, 158 (D. C. E. D. Ill., April 19, 1947) with quotation from Carey & Schuyler's "Illinois Law of Future Interests" in which it is said: " 'Our court, however, has regularly and almost without exception held that interests in whose creation words importing survivorship are used, are contingent on survivorship, and the particular form of words used seems to be of no significance." Hunsley v. Aull, supra, is cited as an example.

In Robertson v. Robertson, 313 Mass. 520, 523, 48 N.E. 2d 29, 32, after a life estate to a daughter of testatrix in a homestead, a remainder was given to her son, Ernest F. Pope, "or his issue." The son died before the life tenant leaving his widow, Essie Pope, surviving. In denying any interest in the remainder to her husband, the court said: "We think that the decree of the Probate Court was based upon the correct interpretation of the will, that Ernest F. Pope took only a contingent remainder in one half part of the 'homestead estate,' with the result that, since the contingency upon which it depended did not happen,

the appellant, Essie Pope, the widow of Ernest F. Pope, is not entitled to share in the partition of the 'homestead estate.' "

A search of the authorities discloses that they uniformly hold a devise of a remainder to a named person or his heirs requires survival to the end of the preceding life estate as a condition precedent to the vesting of the remainder. That is the general rule. In Restatement of the Law, Property, pages 1270, 1271, 1272, it is stated:

"§252. Alternative Limitation Employing the Word 'or.'

"In a limitation purporting to create a remainder or an executory interest, in 'B or his children,' or in 'B or his issue,' or in 'B or his descendants,' or by other language of similar import, the alternative form tends to establish as to the interest of B that

"(a) a requirement of survival to the end of all preceding interests exists; and

"(b) such survival is a condition precedent of such interest.

"* * * The rule stated in this Section is equally applicable whether 'B' is one person or a group of persons. * * *

"Sometimes a limitation of a remainder or an executory interest is worded 'to B or his heirs' * * *. Any such limitation constitutes 'language of similar import' * * *."

In 3 Walsh, Commentaries Law of Real Property (Future Interests) section 298, "Remainders in the Alternative", the author states at page 137:

"Only one of the two remainders in the alternative can ever vest, and on the vesting of one the others are not divested; they are defeated through the failure of the condition precedent on which they depended. They have always been valid, therefore, as remainders at common law as well as at the present time. They may take any form in which two or more remainders are made to depend on some contingency, only one of which is to become vested on the determining of the contingency, the one which actually vests depending on the way in which the contingency is determined."

It has been the uniform holding of this court that in all cases where survivorship is a condition precedent to the

taking of a remainder as in Wilhelm v. Calder, 102 Iowa 342, 71 N.W. 214, Olsen v. Youngerman, 136 Iowa 404, 113 N.W. 938, Smith v. Harris, supra, 227 Iowa 127, 287 N.W. 255, and like cases, the remainder is contingent. The condition of survivorship is just as definite in cases like Taylor v. Taylor, supra, 118 Iowa 407, 92 N.W. 71, and the one now before the court, in which the devise is to "one or her heirs." In the latter clause there is no direct statement, like "surviving" or "then living", yet the factor of survivorship is implicit in the language used and the thought expressed.

█ VI. There is nothing on the face of the will or in the circumstances or conditions connected with its execution that affords any basis for construing "or" as "and" in the "6th" paragraph of the will. There is no evidence of any intention on the part of the testator to use "and" for "or" or that "or" should be considered or construed as "and." As said in the opinion in Taylor v. Taylor, 118 Iowa 407, 410, 92 N.W. 71, 72, "to treat 'or' as 'and' in construing the will would render the whole clause meaningless, as without it the fee would have passed to the children" under section 2913, Code of 1897. And so in this case, under section 1929, Code of 1873, in force when the will was made in 1895, had the testator wished to give Elizabeth a vested remainder or fee in the land there was no need to say anything about heirs, as she would have had an unconditional fee without such words—but the fact that he added the clause " 'or her heirs at law forever' " indicates that he had no intention to give her a vested remainder unless she survived her mother.

There is nothing in any paragraph of the will indicating that he wished any of his property to go to the spouse of any of his children. When he made the will his daughters Catherina and Maria Juliana and his son, George, each had children, and so he made the alternative devise to the children of each, but Elizabeth had been married seven years when he made the will, and no child had been born to her. He may have thought she would never have a child, and for that reason the alternative devise was to her heirs at law. It seems to us that the language of the will instead of indicating carelessness and inadvertence in the drafting clearly points to a definite purpose in each paragraph.

1394

It is a quite natural inclination of one making a testamentary disposition of his property to keep it within the bloodline of his family. This court has mentioned the fact in a number of decisions. See In re Estate of Clifton, supra, 207 Iowa 71, 79, 218 N.W. 926; Bladt v. Bladt, 191 Iowa 1344, 1345–1347, 181 N.W. 765; Scofield v. Hadden, 206 Iowa 597, 603, 220 N.W. 1; Cook v. Underwood, 209 Iowa 641, 644, 228 N.W. 629; Boiler v. Wilson, 239 Iowa 1201, 1204, 34 N.W. 2d 578, 580; Smith v. Harris, supra, 227. Iowa 127, 135, 287 N.W. 255.

It is our conclusion that Elizabeth Auchstetter took a contingent remainder under the will of her father, and that the district court erred in sustaining the defendants' motion to dismiss plaintiffs' petition.

The ruling, final order and judgment are reversed.—Reversed.

All JUSTICES concur except SMITH, J., who concurs in the result.