VERA SMITH et al., Appellants, v. ALVENA HARRIS et al., Appellees.

No. 44416.

AUGUST 1, 1939.

Selmer G. Larson and George C. Murray, for appellees.
Diamond & Jory and Locke & Lampman, for appellants.

OLIVER, C. J.—Testator, Hans Linder, Sr., died in 1906, aged 45 years, and survived by his wife, Anna, aged 38 years, and all of his three children, Christ, Alvena and Hans, Jr., aged 15, 12 and 6 years, respectively. His will, executed five years before his death, was admitted to probate in O'Brien county, and his widow, Anna, elected to take thereunder. Under items 2 and 3 of said will Anna was given all the personalty and one third of the realty absolutely. The aforementioned property is not involved in this suit, and the controversy concerns only the other two thirds of the real estate disposed by the following divisions of the will:

Item 4. "I further give, devise and bequeath to my said wife, Anna Linder, the exclusive use, rental and benefits of the remaining two-thirds, of all the real estate of which I may die seized, or to which I may be entitled, during her natural lifetime, to use as she may see fit, my intention being to furnish a means of ample support for my said wife and my children, during the lifetime of my said wife, and she is hereby authorized and empowered to use the entire amount of said two-thirds of my said real estate, as above set forth, if she finds it necessary to do so to have a comfortable support during her natural lifetime, and the support and education of my children."

Item 5. "After the death of my said wife, if there be any property remaining, of said two-thirds of my real estate, as mentioned in item 4 of this my last will and testament, then it is my will, and I hereby give, devise and bequeath said remaining property to my surviving children, but if there be no surviving children, then said property shall go to my heirs at law, as provided by the laws of the State of Iowa, and if said property goes to my children, then it shall be divided equally among them share and share alike."

The realty consisted of 160 acres of farm land, the home in Paullina, and property in another block in said town. During her life the widow did not dispose of any part of said "two-thirds" interest in said real estate as was her privilege under item 4. She died intestate in 1930, and the two surviving children, appellees Hans, Jr., and Alvena (Harris), inherited her entire estate including the undivided one third of the realty above described willed her absolutely and not in controversy herein. The other child, Christ Linder, predeceased his mother,

Anna. He had died intestate in 1918, without issue and survived by his widow, appellant Vera, who subsequently married appellant Clarence E. Smith.

Shortly after Anna's death, late in 1930, the surviving children, Hans, Jr., and Alvena, had a meeting with Vera at which the will of Hans Linder, Sr., was read and Vera was told she had no interest in any of the property. Thereafter Hans, Jr., and Alvena handled and dealt with the several properties as their own and subsequently made conveyances of parts of the same to each other and sold a part to a third party. Mortgages were also given upon the farm and the home. This continued until 1936, when a lawyer for the third party purchaser questioned the titles of Hans, Jr., and Alvena and they started suit to quiet title against Vera and Clarence Smith. Vera and Clarence countered with this action in partition in which Vera made claim, as the widow of the deceased son, Christ Linder, to his share of the remainder of the undivided two thirds of the real estate disposed of in item 5 of his father's will. Parties defendant (appellees) were Hans, Jr., and Alvena, their spouses, the purchaser of part of the real estate, one of the mortgagees, and a tenant.

The trial court construed the will as providing for only a contingent remainder to Christ Linder, which was contingent upon his surviving his mother, Anna, and held that since Christ predeceased his mother neither he nor his widow, Vera, had any right, title or interest in said property. There was also a finding that Vera had been guilty of laches and was thereby barred from claiming any interest in the property. We may say now that the conclusion hereinafter reached renders unnecessary the consideration or determination of this question of laches. The decree denied partition and quieted title in Hans, Jr., and Alvena against plaintiffs, Vera and husband. From said decree plaintiffs prosecute this appeal.

The decision herein turns upon the judicially ascertained intent of the testator as expressed in the will. Particularly in question is the meaning and effect of item 5 which reads in part as follows:

"After the death of my said wife, * * * then it is my will, and I hereby give, * * * said remaining property to my

surviving children, but if there be no surviving children, then said property shall go to my heirs at law, * * *.''

Appellants contend this remainder vested in the three children at the death of the testator and that the share of Christ passed, upon his death intestate in 1918, to his widow, Vera. Appellees say the remainder was contingent and that by reason of the failure of Christ to survive his mother who was the life tenant no part of the estate ever vested in him. The position of appellants is premised upon the theory that the words of survivorship used in the will are referable to the death of the testator while appellees have their case upon the ground that such survivorship refers to the death of the life tenant.

Unquestionably in this case the remainder ''to my surviving children'' constituted a gift to a class. Many authorities subscribe to the following rule:

''In a gift for life to one, followed by a gift over to the 'surviving children' of the testator, the words 'surviving children' are to be taken as meaning those of the children of the testator who are surviving at the death of the life tenant; and that unless, upon taking the whole will into consideration, the words are plainly used in some other sense, this meaning, which is the ordinary and natural one to be given them, must prevail.'' Thompson on Wills, 2d Ed. 1936, sec. 288. Similar expressions appear in Underhill on Wills, 1st Ed., sec. 350, and 28 R. C. L., p. 260. Sullivan v. Garische, 299 Mo. 496, 129 S. W. 949, 49 L. R. A. (N. S.) 605, differentiates the foregoing rule from the rule governing other situations in the following language, which is quoted with approval in Bates v. Bates, Mo. Sup., 124 S. W. 2d 1117, 1121:

'' * * * if an estate is given by will to the survivors of a class to take effect on the death of the testator, the word 'survivors' means those living at the death of the testator; but if a particular estate is given and the remainder is given to the survivors of a class, the word 'survivors' means those surviving at the termination of the particular estate.''

The rule that survivorship refers to the death of the testator is confined to those cases in which there is no other period to which survivorship can be referred, and ''where such gift is preceded by a life or other prior interest, it takes effect

in favor of those who survive the period of distribution, and of those only.'' Jarman on Wills, 7th Ed., p. 2065; Roundtree v. Roundtree, 24 S. C. 450, 2 S. E. 474. A few leading cases from other jurisdictions are Cripps v. Wolcott, 4 Madd. 11, 56 Eng. Rep. 613; Coveny v. McLaughlin, 148 Mass. 576, 20 N. E. 165, 2 L. R. A. 448; Brown v. Potter, 114 Conn. 441, 159 A. 275; Stevens v. Edson, 82 N. J. Eq. 105, 87 A. 343. These with numerous other holdings pro and con are listed and discussed in an extended note in 114 A. L. R., pages 4 to 113. The author of the note observes, at page 54, that in the later English and in the majority of American cases the presumption is that words of survivorship refer to the period of distribution unless a special intent to the contrary is found in the will.

''The established rule is that the use in a will of the word 'surviving', or an expression akin to it to describe a class who are to take after an intervening life estate, refers to the termination of such life estate and not to the death of the testator. The employment of such a word or words under such circumstances shows clearly that the testator intended to postpone the vesting of the gift over to the time when the life estate would end. Since the case of Cripps v. Wolcott, 4 Madd. 11, 56 Eng. Rep. 613, decided in England in 1819, the above rule has become thoroughly established in this country and is supported by the great weight of authority.'' Industrial Trust Co. v. Wilson, 61 R. I. 169, 200 A. 467, 475.

However, the foregoing rule is not a rule of substantive law but one of interpretation which has been adopted by courts as indicating in the first instance the intention of the testator. It is said the rule will never be used to defeat a contrary intention where one appears with reasonable certainty.

Cited in the A. L. R. note as supporting the majority rule is Baker v. Hibbs, 167 Iowa 174, 179, 149 N. W. 85, 87, in which the will gave the remainder after a life estate to ''the living heirs of the body of the late P. W. Hibbs''. Contention that the remainder was vested was based upon well established rules, viz., a will speaks from the testator's death; a remainder will if possible be construed to be vested; a devise to a beneficiary living at testator's death takes effect at once notwithstanding the time of its enjoyment may be postponed. Holding the re-

mainder was contingent, the court observed that a testator may make a will speak as of some other period than his death and as a rule control the disposition of his property and said:

"This is peculiarly true where, as in this case, the gift was to a class living at a particular time. And it is a general rule that where there is a devise of a life estate with a remainder to a class, those members of the class, and those only, take, who are in existence at the time fixed for distribution."

Bell v. Bell, 223 Iowa 874, 273 N. W. 906, does not announce a contrary rule. The statement there made that the surviving grandchildren meant those surviving the testatrix apparently was merely a convenient expression used in mentioning the class. The question of the survivorship of the grandchildren was not in issue. As a matter of fact all of them survived the intervening life estates. It happened that one of said grandchildren was not born until several years after testatrix's death but before the determination of the precedent life estates. However, that such afterborn grandchild had rights equal to those born prior to testatrix's death appears to have been conceded and was not an issue in the Bell case.

Iowa authorities involving vested and contingent remainders are not in complete harmony. A recent and authoritative discussion of the conflicting views appears in Skelton v. Cross, 222 Iowa 262, 266, 268 N. W. 499, 502, 109 A. L. R. 129.

Speaking for the court, Justice Hamilton approved certain so-called common law definitions of contingent and vested remainders as having become the established rule in this state. In part a vested remainder was defined as "—one where the estate is invariably fixed, to remain to certain determinate persons." In that case after the death or remarriage of testator's wife, the remainder was given to two children, or the issue of any such child then deceased, or if said deceased child has no issue then to the surviving child. The court held the remainder was contingent and repudiated certain older cases not in accord therewith saying that the common law definitions had been adhered to by a majority of the court for a considerable length of time and that to again "turn about face" and apply the former rule "would render the confusion all the more confounding". Skelton v. Cross, supra, was not a class case and

did not cite or discuss Baker v. Hibbs, supra, but did follow and approve the rule of other cases in the same line and disapproved cases which had adopted the contrary rule. See cases cited therein and in note in 109 A. L. R., pages 154-156; see, also, Scofield v. Hadden, 206 Iowa 597, 220 N. W. 1; Sutherland v. Green, 191 Iowa 711, 182 N. W. 785; Birdsall v. Birdsall, 157 Iowa 363, 132 N. W. 809, 36 L. R. A. (N. S.) 1121.

In construing provisions of a will precedents and principles of interpretation are nothing more than aids employed as a means to an end. The end sought is the ascertainment of the expressed intent of the testator.

If not in contravention to some established rule of law or public policy such intent will be carried into effect.

The provisions in controversy should be construed, not as standing alone, but as related to all other provisions of the will so that the intent of the testator may be gathered from the entire instrument.

Item 5 in substance provides, after the death of my wife, then it is my will and I give to my surviving children, but if there be no surviving children then to my heirs at law. This gift is not to ''children'' but to the class ''surviving children''. Under ordinary and natural grammatical construction, the expression ''surviving children'' is referable to the time fixed in the same sentence, to wit: the death of the wife. If there should at that time be no surviving children the will provides that said remainder go to testator's heirs at law, as provided by the laws of Iowa.

This construction is supported by other provisions of the will and the surrounding circumstances. In item 2 of the will all personalty is given to the wife without reference to survivorship. Nor is such condition attached to the absolute gift to her of one third of the realty in item 3. Item 4 provides that the remaining two thirds shall be used for the support of my wife and my children (not my surviving children) during the lifetime of my wife. Although words of survivorship were not necessary, their absence from items 2, 3 and 4 indicates that in the mind of the testator there was no substantial expectation he would not be outlived by both his wife and his young children.

Items 2, 3 and 4 all took effect at testator's death. Had testa-

tor intended item 5 to take effect at his death he might well have omitted reference to survivorship as he had done in the preceding items. However, item 5 contains not only words of survivorship but also a gift over to testator's heirs at law, "if there be no surviving children". These additional provisions in item 5 indicate testator envisioned the possibility that some or all of his children might not survive until the time they would be entitled to participate in the remainder. They add strength to the implication that testator intended the remainder should not vest at his death as did the bequests in the preceding items.

Children are mentioned only as classes and are not referred to by number or by name. The class mentioned in item 4 is "children". In item 5 the remainder is given to "surviving children" as a class. Presumably the expression "surviving children" was used advisedly and with the intent of modifying and limiting the class "children". From the context of item 4 it is apparent that the word "children" was intended to mean those surviving the testator. Therefore, it may properly be inferred the expression "surviving children" in item 5 was not intended by the testator to refer to those surviving him, but instead to the children who should be surviving at the other period mentioned in the paragraph, to wit: the death of their mother.

The substitutionary provision to "heirs at law" could take effect, if at all, only after the deaths of the wife and all the children. Aside from them testator was not particularly concerned with the exact identity of possible residuary legatees and used the general descriptive expression "heirs at law". Manifestly, his primary interest was in the members of his immediate family and they were the objects of his bounty. Under the circumstances limiting the gift of the remainder to the children who should survive the wife would be natural and in accord with the indicated state of mind of testator.

From the foregoing we conclude the words "my surviving children" as used in the will do not refer to those children surviving the testator but instead should be construed as referable to "the death of my said wife". It follows that the son, Christ, who predeceased his mother, took no part of the remainder and

that upon his death intestate no interest therein passed to his widow, appellant Vera Smith.

Wherefore, the decree of the district court is affirmed.—Affirmed.

SAGER, HALE, MILLER, BLISS, HAMILTON, MITCHELL, and STIGER, JJ., concur.