ELIZABETH C. PRINGLE, appellant, v. HIRAM C. HOUGHTON, JR., and H. DEEMER HOUGHTON, trustees under will of Hiram Cole Houghton, deceased, et al., appellees.

No. 49387.

(Reported in 88 N.W.2d 789)

March 11, 1958.

Gibson, Stewart & Garrett and Harry T. Watts, all of Des Moines, for appellant.

R. J. Swanson, of Red Oak, for trustees-appellees.

Jonathan B. Richards, guardian ad litem, of Red Oak, for appellees Stuart H. Pringle, Jr., Frederick C. Pringle, Ann Pringle and Joan Pringle.

PETERSON, C. J.—This action involves construction of the will of Hiram Cole Houghton. He died in Montgomery County in September 1925. He left surviving him his widow, Lulu W. Houghton, his third wife, and six children. Julia J. Eldridge was a daughter by his first wife. He made special mention of her in his will, and she is not involved in this action. He had five children by his second wife and this action pertains to a trust established by decedent as same affects the five children: Jonathan C. Houghton, Hiram C. Houghton, Jr., Luella H. Pringle, Mary H. Will, Edith H. Heckert, and their heirs, if deceased.

Hiram Cole Houghton established a trust in his will in which he provided that $6000 per year be paid to his widow, Lulu, during her lifetime, or until remarriage; that $3500 be paid annually to each of his five children, or, if deceased, to the "heirs of the body" of any decedent; if a child died without children, then to his surviving children or their heirs.

Jonathan died intestate in 1930 leaving a wife and four children. The income from the trust payable to Jonathan, if he had lived, has been paid throughout the years to his children.

Luella died testate in 1945 leaving three children: Donald R. Pringle, Stuart H. Pringle and Louise Pringle Olson.

Stuart H. Pringle died a resident of Stamford, Connecticut, in 1954 leaving his wife, the plaintiff, Elizabeth C. Pringle, and four minor children, the defendants.

On December 23, 1949, Stuart H. Pringle had made an

assignment to his wife, Elizabeth, of his interest in both income and corpus of the trust. On the basis of this assignment she filed this action.

Lulu W. Houghton is still living, unmarried and residing in the state of California.

The provisions of the will of decedent which pertain to the action are following portion of the fifth and all of the sixth paragraphs of ITEM III: "Fifth. * * * in the event of the death of any of the said named children during said period [of trusteeship], the share and payments that would have gone and been paid to the said child shall be paid to the heirs of the body of said decedent, and, in the event said deceased child shall leave no heirs of his or her body then the share that would have gone to said child if living shall be divided among the other children set out in this paragraph or the heirs of the body of any that may be deceased. * * * Sixth. The Trusteeship herein set out, mentioned and referred to shall continue as long as my said wife, Lulu W. Houghton, remains my widow, and in event she does not remarry shall continue until the death of my said wife, and in any event whether she remarries or is deceased the said trusteeship shall continue for a period of twenty years from the date of my death. Upon the termination of the said period of trusteeship as herein set-out I do then direct that all of my property and estate then remaining be by my said trustees or their successors in office divided equally and paid to my children, Jonathan C. Houghton, Hiram C. Houghton, Jr., Luella H. Pringle, Mary H. Will and Edith H. Heckert, share and share alike, and, in the event of the death of any of the said named children before said termination of said trusteeship, the share that would have gone to said child, shall be paid to the heirs of the body of said decedent, and, in the event said deceased child should leave no heirs of his or her body then the share that would have gone to said child, if living, shall be divided in the manner herein set out to those then living, or the heirs of the body of any that may be deceased."

There is no dispute as to the facts. The only issue in the case is whether under the will of Hiram Cole Houghton a vested remainder was created in favor of his grandson, Stuart H.

Pringle, so that upon Stuart's death his widow, under assignment from him, became the owner of his share of the income from the trust, and of one third of the Luella H. Pringle one-fifth interest in the corpus of the estate.

The trial court decided Stuart's interest was not vested in him so he could make an assignment to his wife, effective after his death; that he held a contingent remainder, and upon his death the income and corpus became the property of his four children, subject to their survival after termination of the trust. Plaintiff has appealed.

 I. The primary rule in an action for construction of a will is to arrive at the intention of the testator. The complete will and all terms thereof must be considered in arriving at the intention. Westcott v. Meeker, 144 Iowa 311, 122 N.W. 964, 29 L. R. A., N. S., 947; Scofield v. Hadden, 206 Iowa 597, 220 N.W. 1; In re Estate of Organ, 240 Iowa 797, 38 N.W.2d 100; In re Estate of Wright, 241 Iowa 349, 41 N.W.2d 80; Lytle v. Guilliams, 241 Iowa 523, 41 N.W.2d 668, 16 A. L. R.2d 1377; Katz Investment Co. v. Lynch, 242 Iowa 640, 47 N.W.2d 800; In re Trusts of Young, 248 Iowa 309, 79 N.W.2d 376; 57 Am. Jur., Wills, section 1133; 95 C. J. S., Wills, section 590.

Excellent general statements as to the importance of arriving at the intention of the testator appear in 57 Am. Jur., Wills, section 1133, and 95 C. J. S., Wills, section 590.

We quote from 57 Am. Jur., supra, page 726: "Recognition of the fundamental axiom that the ascertainment and effectuation of the intention of the testator is controlling in the construction of wills is found in countless decisions. The courts have stated this principle in various forms, among which may be cited, by way of example, such statements as the following: The chief object and purpose in construing a will is to ascertain and give effect to the intention of the testator; the cardinal rule of testamentary construction is to ascertain the intention of the testator and give it effect; the construction of any will must be for the purpose of determining the dominant intent of the testator; * * *."

95 C. J. S., supra, page 737, states: "The chief object and purpose of construction of a will is to discover and carry out the intent of the testator as expressed in the will, and this is the

prime duty of the court, and its sole function or province. In other words, the intention of the testator is the prime consideration, controlling factor or element, or pole star to guide the court to which the problem is presented in the construction of every will."

From the numerous decisions of this court we only quote from an early case and a recent case. Westcott v. Meeker (1909), supra, 144 Iowa at page 319: "The general rule recognized in all the courts that the testator's intent shall be carried out when it is ascertainable from the language used by him, taking the will as a whole, is uniformly applied, * * *." In re Estate of Wright, (1950), supra, 241 Iowa at page 356: "The foundation upon which the construction of any will is based is the intention of the testator. When that is ascertained his will is ascertained."

II. The question at issue depends primarily on the construction of the fifth and sixth paragraphs of ITEM III of the Hiram Cole Houghton will. The complete will, and particularly said two paragraphs, clearly indicates that outside of the life provision for his widow, there was a strongly expressed intent on the part of Mr. Houghton to restrict the descent of his property to the Houghton bloodline. It would be difficult to word provisions of a will in a more restricted sense as to the family than the wording found in the quoted paragraphs.

On the question of a testator intending to keep his property within the family group see 57 Am. Jur., Wills, section 1186, page 777, as follows: "Finally, there is authority to support the conclusion that where a will directs that if a member of a group of beneficiaries dies without children or issue his share shall pass to the surviving members, and one or more members die leaving issue, there is reason to conclude, particularly if the will contains a gift over to their issue or children of the shares of members who die leaving descendants, that the testator's underlying intention, in the absence of specific language in the will to the contrary, was to keep the subject matter of the gift in the families of the original members of the group."

In Henkel v. Auchstetter, 240 Iowa 1367, 1394, 39 N.W.2d 650, 664, we said: "It is a quite natural inclination of one making a testamentary disposition of his property to keep it

within the bloodline of his family. This court has mentioned the fact in a number of decisions. See In re Estate of Clifton, supra, 207 Iowa 71, 79, 218 N.W. 926; Bladt v. Bladt, 191 Iowa 1344, 1345–1347, 181 N.W. 765; Scofield v. Hadden [supra]; Cook v. Underwood, 209 Iowa 641, 644, 228 N.W. 629; Boiler v. Wilson, 239 Iowa 1201, 1204, 34 N.W.2d 578, 580; Smith v. Harris, supra, 227 Iowa 127, 135, 287 N.W. 255." See also In re Trusts of Young, supra.

III. The distinction between a contingent remainder and a vested remainder, under facts as in this case, is whether the descent is to a determinable person, or a dubious or uncertain person, or upon a dubious or uncertain event. Under the Houghton will there are dubious or uncertain persons involved until after the remarriage or death of Lulu W. Houghton, the widow. As to what children, or what grandchildren, or even what great-grandchildren, will take depends on the time of happening of one of the two events as to the widow. The question is no longer in doubt in Iowa. This court has rendered numerous decisions in similar cases, all supporting the decision of the trial court. Wilhelm v. Calder, 102 Iowa 342, 71 N.W. 214; Birdsall v. Birdsall, 157 Iowa 363, 132 N.W. 809, 36 L. R. A., N. S., 1121; Westcott v. Meeker, supra; Horner v. Haase, 177 Iowa 115, 158 N.W. 548; Fulton v. Fulton, 179 Iowa 948, 957, 162 N.W. 253, 256, L. R. A. 1918 E 1080; Skelton v. Cross, 222 Iowa 262, 268 N.W. 499, 109 A. L. R. 129; Smith v. Harris, 227 Iowa 127, 287 N.W. 255; Anderson v. Conklin, 229 Iowa 232, 294 N.W. 339; Lincoln Joint Stock Land Bank v. Mitchell, 239 Iowa 995, 1000, 1001, 33 N.W.2d 388, 391; Henkel v. Auchstetter, 240 Iowa 1367, 39 N.W.2d 650; Scofield v. Hadden, In re Estate of Wright, In re Estate of Organ, Katz Investment Co. v. Lynch, and In re Trusts of Young, all supra. See also 33 Am. Jur., Life Estates, etc., section 75; 96 C. J. S., Wills, section 921.

In Westcott v. Meeker, supra (pages 312, 313, 322 of 144 Iowa), John Westcott provided in his will that his widow should have a life estate in a certain property in Marshalltown and that the premises should pass at her decease to his son, Charles Alfred Westcott, " 'to have and to become possessed of the same at the death of my wife, Anna Westcott, and to hold the same during his, Charles Alfred Westcott's natural life.' " There is

some language in the will against alienation by the children during life tenancy, but this provision was given no consideration in connection with the court's decision. The will then provided: " 'At the death of my children aforesaid their respective portions of said lots, numbered seven and eight [Charles had life interest in part of this property] descend to their heirs respectively, said heirs to have absolute title unto their respective portions.' " The widow conveyed her life estate and Charles executed a warranty deed to the same grantee. The action is between the children of Charles and the heirs of such grantee. The question was whether Charles had a vested or contingent remainder. This is the case in which we judicially rejected the Rule in Shelley's case. It has also been rejected in Iowa by legislative enactment. Section 557.20, 1954 Code. We held Charles had only a contingent remainder, in following language: "It is sufficient to say that in the case before us there was a remainder entirely contingent, and necessarily remaining contingent, *until the termination of the life estate,* as to what particular person or persons should be entitled to enjoy it." (Emphasis ours.)

In Horner v. Haase, supra (pages 116, 119 of 177 Iowa), Otto Klug created a trust and provided that his widow should have the income during her lifetime. He then provided: " 'Upon the death of my said wife, all of my estate then remaining shall be taken absolutely, share and share alike, by my six children [naming them, including Otto Klug, Jr.]—who may be living at that time, and the issue of any such child who may then be deceased, such issue taking the share to which such deceased child would be entitled if living.' " Otto Klug, Jr., died May 1, 1912, which was prior to the death of his mother, the life tenant. The question was whether the share of the estate devised to Otto Klug, Jr., vested in him upon the death of testator, or was it contingent until the death of the surviving widow of testator? We held the interest of Otto Klug, Jr., was a contingent remainder, stating: "Only upon the happening of the event, i.e., the death of the life tenant, might it be known who were entitled to share in the testator's bounty, and, therefore, the remainder was contingent."

Scofield v. Hadden, supra, pertains to the will of David Scofield. By the fourth paragraph of his will he devised a life estate to his daughter, Nancy J. Mighell, in the real estate involved in the case, using the following words at page 599 of 206 Iowa: " 'to be used and enjoyed by her during the term of her natural life.' " He then provided that after the death of Nancy (and other children as to other property) the property should descend to her children " 'and each of their heirs and assigns forever, provided however that in case either of my said children shall die without issue then in that case the said real estate so hereinbefore devised to them shall descend to and become the property of my other children to be held and enjoyed by them and their heirs and assigns forever.' " The provision in substance is similar to the provision in the Houghton will. Nancy had two daughters, but they died before her so she died without issue. She left a will leaving all her property to her surviving husband. The action was in partition as between the heirs of David Scofield. Nancy's surviving husband was made a party. He filed a cross-petition claiming that Nancy had issue—the two daughters who had died—that he was their heir and that a vested remainder had been established in Nancy's children of which he became the owner. We held the remainder was contingent in following words (page 603): "We hold that it is apparent from the context of the will before us that the testator intended the devise to the remaindermen to take effect upon, and not before, the death of the life tenant; * * * he [testator] adds, in substance, that, if his daughter, Nancy J. Mighell, shall die without issue, then and in that case, the real estate shall descend to and become the property of his other children, and thus provides a substitution of his other children, who shall become the owners of the real estate at the time of the death of Nancy J. Mighell, in the event that she left no children or issue surviving her."

In In re Estate of Organ, John P. Organ placed his property in trust during the life of his widow and provided she should have the income as long as she lived. After her death the property should be divided among his five children. He provided (page 799 of 240 Iowa): " 'Should any of my sons or daughters * * * be deceased when if living he or she would be

entitled to receive any money or other property under and by virtue of the provisions of this will, in that event such money or property shall pass to and become the property of the heirs of said deceased son or daughter. But if there be no such heir or heirs of said deceased son or daughter * * * said money or property will pass to and become the property of my surviving sons and daughters and the heirs of any deceased son or daughter, said heir or heirs taking the portion the parent would receive if living.'" His son Richard departed this life after his death, but before the death of his widow, leaving no issue, but leaving a surviving widow who was the sole beneficiary under his will. She claimed Richard's share became vested upon the death of his father, which claim was contested by the other four children. We held the remainder was contingent because it was to take effect to an uncertain person or persons. Since Richard died before his mother no interest in the remainder ever vested in him. We concluded (page 800): "Her [John P. Organ's widow] death was the event upon which the trustees were required to distribute the property to testator's living children and the heirs of those 'dead at that time.'"

In In re Estate of Wright, (pages 351, 352, 355 of 241 Iowa), Emma R. Wright devised the rents and profits from her estate to her daughter Virginia "'during her natural life or as long as she remains single.'" She then provided that upon the death or marriage of Virginia her other seven children should become owners of the property. She also provided: "'In case of the death of any of the above mentioned heirs [her other seven children], the children of such a one so dying, shall receive the parents' share, but in case no issue is left, then such share shall go to the above legatees in equal parts.'" One of the children, Joseph E. Wright, died before the death of the life tenant, leaving no issue. He left surviving him his widow and a legally adopted daughter, who is the defendant in this case, and who claims there was a vested remainder in her adoptive father upon the death of his mother. We held his interest was a contingent remainder, stating: "The facts that Joseph E. Wright died before the life tenant, leaving no surviving issue, were contingencies which defeated his right to a vested remainder, and prevented the estate limited to him from ever

taking effect as a vested remainder. * * * the remainder estate limited to Joseph E. Wright was never 'invariably fixed to remain to certain determinate persons' * * *. The condition that he should survive the life tenant, leaving issue surviving him * * * was uncertain both in the event and in the personnel of the issue who might survive."

As a general provision 96 C. J. S., Wills, section 921, states: "* * * a contingent estate or interest is one in which there is no present fixed right of either present or future enjoyment, but in which a fixed right will arise in the future under certain specified contingencies. More specifically, an interest is contingent when it is limited to take effect on the happening of an uncertain or doubtful event, or * * * the person or persons to whom it is limited are not ascertained or yet in being."

Also see 33 Am. Jur., Life Estates, etc., section 75, supra: "Whether a given remainder is vested or contingent turns on the testamentary intent, and where the intention is that the distribution of the estate shall be postponed until a future time to persons then to be ascertained, it is contingent, as distinguished from the instance in and where the ultimate takers are identifiable at the date of death. In other words, where the person or persons who will take the remainder can only be ascertained upon the determination of the particular estate, the remainder, until then, is contingent."

IV. Appellant cites a number of cases, some of which in fact sustain appellees' position, but only presents extended argument and quotations as to three cases: Katz Investment Co. v. Lynch and Lytle v. Guilliams, both supra, and Martin v. Holgate, 1 Law Rep. H. L. 175, an English case. We will consider only the cases argued.

There are two differences which distinguish the Flynn will in Katz Investment Co. v. Lynch, supra, from the Houghton will. The Houghton will is in the category of the Organ will, in In re Estate of Organ, supra, the Scofield will, in Scofield v. Hadden, supra, and the many similar cases heretofore cited.

1. In the Katz case we used the following language at page 650 of 242 Iowa: "When a limitation is in favor of the heirs of a designated person, the heirs are those who would take under the statutes of descent applied as of the death of such

person, *unless a contrary intent of the testator is found from additional language of the will or circumstances."* As to Annabelle, the Flynn will simply provided "one fourth [of income] to the daughter Annabelle 'or her heirs during the continuance of the trust.' " (Page 644) No other provision was made as to this income. The Houghton will provides: "\* \* \* in the event of the death of any of the said named children during said period [trusteeship], the share and payments that would have gone and been paid to the said child shall be paid to the heirs of the body of said decedent, *and, in the event said deceased child shall leave no heirs of his or her body then the share that would have gone to said child if living shall be divided among the other children set out in this paragraph or the heirs of the body of any that may be deceased."* (Emphasis ours.) The emphasized provision does not appear in the Flynn will, and manifests a *contrary intent* by Mr. Houghton.

2. We also said: "A vested remainder, whereby the estate passes by the conveyance but possession and enjoyment are postponed until the particular estate is determined, is where the estate is invariably fixed to remain in certain determinate persons. *A contingent remainder is limited to take effect to a dubious or uncertain person or upon a dubious or uncertain event."*

Under the terms of Mr. Houghton's will there is a dubious and uncertain situation as to what persons will take the Houghton property until the trusteeship is concluded. Unfortunate family tragedies happen. Life is always uncertain. If anything should happen to any of the Pringle children before termination of the trust the Pringle share descends to survivors. Or a contingency could arise where it would go to the other Houghton children, or the heirs of their body. It is impossible for this court or anyone to tell what persons will get the property in the Houghton Trust until either Mrs. Lulu W. Houghton remarries, or departs this life. At this time the persons are "dubious and uncertain."

In Katz Investment Co. v. Lynch, supra, we specifically distinguished Scofield v. Hadden, supra. We said (page 653 of 242 Iowa): "Scofield v. Hadden, 206 Iowa 597, 599, 220 N.W. 1, 2, perhaps deserves special mention." After quoting terms

of will as heretofore shown, we concluded: "We held the will clearly expressed the intent of the testator that the remainder to the children of a life tenant should not vest until the life tenant's death. Emphasis was placed upon the provision that the property should descend to and *become the property of* the children of a life tenant at his death and upon the substitutionary devise to testator's other children in case any child should die without issue. These facts, especially the substitutionary devise to the other children, plainly distinguish Scofield v. Hadden from the case at bar."

Lytle v. Guilliams, supra, can be distinguished from the instant case and from the many cases cited. Wesley Roberts left a life estate to his widow in the real estate involved. Subject to her life estate he devised the real estate to his son, Harry, but also subject to the following provision as to his two daughters (page 524 of 241 Iowa): " '7th. I will that at the death of my wife that the real and personal property be divided among my children as follows: I will to Harry Roberts all the personal property of my estate that may be remaining at the death of my wife, and all the real property above mentioned; and that out of the property above mentioned is to be paid to Cora Slinker, Two Thousand Seven Hundred ($2700.00) Dollars, and to Myrtle Lytle, Two Thousand Seven Hundred ($2700.00) Dollars.' "

Cora died in 1920 leaving two children; Myrtle in 1929 leaving three children; Harry in 1939, and the widow, Mary, in 1947. In 1928 Mary and Harry mortgaged the real estate to C. C. Guilliams. He foreclosed the mortgage in 1939, but did not make any of Cora's nor Myrtle's children parties. They sued to establish their bequests as prior liens to the mortgage. Defendants are heirs of Guilliams. Defendants claim the interests of Cora and Myrtle were contingent, and lapsed on their death before the life tenant.

Our decision first describes the evident intention from the will as a whole that Wesley Roberts was dividing his property about evenly among his children. To do so it was necessary that Cora and Myrtle each receive the $2700. If neither they nor their heirs received these bequests, it would practically disinherit Cora and Myrtle, and their heirs, in favor of Harry and

his heirs. We discuss the "divide and pay over" rule on which defendants rested their case, and held it was discredited, and furthermore offered no assistance in arriving at testator's intention.

More important, and in accordance with the oft-repeated principle as between vested and contingent remainders, there were no "uncertain or dubious persons" involved in arriving *at the bequests to Cora and Myrtle*. They were *clearly determinable* at testator's death, and from the provisions of his will. We properly held the bequests became vested when he died, and only the enjoyment was postponed until the death of his widow. There is no similarity as between the provisions of the Roberts will and the Houghton will.

The only case cited and quoted by appellant supporting her contention is the English case of Martin v. Holgate, supra. This is a decision of the House of Lords rendered in 1866. In view of three generations of judicial pronouncements to the contrary, we do not accept the doctrine announced in Martin v. Holgate. As to the question involved in this case we will continue to maintain our position of disagreement with the House of Lords of England.

V. Appellant places emphasis upon the provision of the Houghton will that upon the death of a child, the income (and in sixth paragraph the corpus) shall be paid to the "heirs of the body of said decedent." She contends testator was careful to list his children as takers and also to list his grandchildren as alternative takers, but made no provision beyond such group. Appellant offers no citations directly supporting this contention, and we find none.

Heirs of the body are not restricted to the immediate successive generation. 95 C. J. S., Wills, section 679, provides: "The term 'heirs of the body' ordinarily means such of the issue or offspring of a person as may by law inherit, to the remotest posterity, * * *. 'Heirs of the body' is to be construed as a limitation to designate heirs in succession, unless the context clearly shows that it was intended as a description of particular persons."

Pearson v. Easterling, 104 S. C. 178, 181, 88 S.E. 376, 377, states: "The words 'heirs of the body' mean all lineal descend-

ants to the remotest posterity, unless the instrument shows they were used in a restricted sense, as to indicate 'children'."

We quote from Holman v. Wesner, 67 S. C. 307, 309, 45 S.E. 206: "The words 'issues of the body,' like 'heirs of the body,' mean all lineal descendants to the remotest posterity, and are words of inheritance and not of purchase, unless the instrument shows they were used in a restricted sense, as to indicate 'children.' * * * The words 'issues of the body' in this deed can only be construed as denoting an indefinite succession of lineal descendants who are to take by inheritance."

In Rodgers v. Rodgers, 218 Miss. 655, 666, 67 So.2d 698, 702, 40 A. L. R.2d 254, 260, 261, the question of "heirs of the body" was considered. It pertained to a deed, but the doctrine would be equally applicable to provisions of a will. J. H. Brown executed a deed to his daughter, Mary Rodgers. A provision in the deed was as follows: " 'To have and to hold unto said party of the second part, during her natural life, and after her death, to the heirs of her body in fee simple.' " She had two children, but they died before she did, leaving children surviving them. The question was whether the grandchildren of Mrs. Rodgers would take a fee simple estate under the wording of the deed. The opinion states: "At the time of the execution of this deed she [Mrs. Rodgers] had two children. J. H. Brown of course did not know and could not know whether one or both of these children would survive her, or whether neither would survive her, nor did he know whether she might bear other children subsequent to the date of the deed, nor did he know which of her children would have issue. In designating that the fee simple title would go to the heirs of her body, he unquestionably intended to include such of her surviving issue or offspring as may by law inherit from her *to the remotest posterity*." (Emphasis ours.)

There is no provision in the Houghton will affirmatively limiting the "heirs of the body" to the grandchildren group, nor restrictions indicating "children." The provisions of the will are to the contrary.

The decree of the trial court is affirmed.—Affirmed.

All JUSTICES concur except SMITH, J., not sitting.